In re FLICK.

(District Court, S. D. Ohio, W. D. November 5, 1900.)

**1. BANKRUPTCY—DEBTS HAVING PRIORITY—WAGES OF CLERK.**

One employed as a salesman in a store or shop is a clerk, within meaning of Bankr. Act 1898, § 64b, subd. 4, giving priority to claims for wages due to "workmen, clerks, or servants" which have been earned within three months before the date of the commencement of proceedings.

**2. SAME.**

Where, by agreement, a clerk permits his employer to retain a certain portion of his wages each week to form a fund which is to be paid to the clerk or used for his benefit later, on the bankruptcy of the employer the clerk cannot claim priority for the sums so retained during the preceding three months as wages; such fund having become, by the contract between the parties, a debt of another class.

**3. SAME—APPLICATION OF PAYMENTS—PREFERENCES.**

Payments made by a bankrupt to a clerk within three months prior to the filing of the petition. in the absence of a specific application to other debts, are to be applied in payment of the wages earned by the clerk during that time; but such payments, up to the amount of wages so earned, do not constitute a preference which must be surrendered under Bankr. Act 1898, § 57g, before the clerk can prove his claim for the remainder due him, unless the bankrupt's assets are insufficient to pay all preferred claims, since it does not enable the creditor to obtain a greater percentage of his debt than other creditors "of the same class," within the provisions of section 60a.

**4. SAME—PREFERENCES.**

Under Bankr. Act 1898, § 57g, it is not necessary, to constitute a preference which must be surrendered by a creditor before he can prove his claim, that he should have had knowledge or notice of his debtor's insolvency. and it is immaterial that a payment made on his debt within the four months was received by him through a collection agency.

**5. SAME—PAYMENT OF SEPARATE CLAIMS.**

Where a general creditor of a bankrupt made him further short loans, which were repaid within four months prior to the filing of the petition and while the debtor was insolvent, although the transactions were separate, such payments constitute preferences upon the entire debt, which must be surrendered, under Bankr. Act 1898, § 57g, before the creditor can prove his claim.

**6. SAME—SURRENDER OF PREFERENCE.**

An offer by a creditor to allow the amount of preferences received by him to be deducted from any dividend payable to him on his claim is not a compliance with the requirement of Bankr. Act 1898, § 57g, and does not entitle him to prove his claim.

**7. SAME—PROVABLE CLAIMS—FRAUDULENTLY INCREASING AMOUNT.**

Where one creditor of a bankrupt has attempted to obtain an advantage over others, by fraudulently including in his account fictitious items or incorrect amounts, he forfeits his right to have his claim allowed in any sum.

In Bankruptcy.

The following is the opinion of Referee GEIGER:

"This matter has come on for hearing before the referee upon the petition of the trustee and certain creditors for the re-examination and disallowance of the claims of Clarence E. Edmondson, E. C. Edmondson, Fred Kaufman, and Charles W. Flick, which claims were filed with the referee, and heretofore allowed, for the purpose of voting for trustee. On November 4. 1898, the bankrupt, Claude W. Flick, purchased of the administrator of E. C. Mellott a stock of gents' furnishing goods, located on South Fountain avenue, Springfield, Ohio. paying therefor the sum of $800. He continued in the business until December 11, 1899, when he made an assignment to his brother, Charles

W. Flick. On December 22, 1899, Edgar G. Stearns and other creditors of the said Claude W. Flick filed their petition in the United States court, asking that the said Claude W. Flick be declared a bankrupt, and on the 20th day of January, 1900, said Flick was declared a bankrupt by the United States court, and the case was referred to the referee.

"I will examine the several claims which have been asked to be disallowed, separately.

"Claim of Clarence E. Edmondson.

"Clarence E. Edmondson has filed his claim for $269.13, 'for work and labor done and performed as employé as wages within three months from the date of Claude W. Flick's assignment to C. W. Flick, which affiant (Clarence E. Edmondson) claims for wages under state as well as United States laws.' Claude W. Flick, the bankrupt, and Charles W. Flick are brothers. E. C. Edmondson is the brother-in-law of the bankrupt, and Clarence E. Edmondson is his son and the nephew of the bankrupt. Clarence E. Edmondson had been employed by E. C. Mellott, the former owner of the store, as a clerk, or, more properly speaking, a salesman, at $5 per week, and he served as such under said Mellott until the death of Mellott, in 1898. When his uncle, Claude W. Flick, bought the stock of goods from the administrator of Mellott, November 4, 1898, Clarence E. Edmondson was employed, as is claimed by him and his uncle, as salesman and buyer, at the rate of $18 per week, only $5 per week of which was paid to him in cash, he claiming that the balance ($13 per week) was retained by the uncle, with his consent, for the purpose of accumulating a fund in his uncle's hands to furnish him with the means for a collegiate education. He continued his services at $18 per week until September 1, 1899, when his salary was raised by his uncle from $18 to $20 per week, he continuing to receive $5 a week in cash. Clarence E. Edmondson, at the time he first began business with Mr. Mellott, was about 18 years old, and at the time of the assignment of his uncle was about 22 years old. It is claimed by the creditors on the one hand that the contract purporting to have existed between Clarence E. Edmondson and his uncle for the payment of $18 and $20 per week for his services was fraudulent; while, on the other hand, it is claimed by Clarence E. Edmondson, in which he is supported by his uncle, the bankrupt, that the contract was made in good faith, and that the services rendered by him were fairly worth the sums agreed to be paid by the uncle. Evidence has been introduced by the creditors tending to prove that in the city of Springfield the prevailing rate of wages for salesmen of the age and experience of Clarence E. Edmondson is much less than $18 per week; that $5 per week would have been a fair compensation for services of the young man. To the referee it appears that $18 and $20 per week was an exorbitant salary for the services of the claimant, and I must confess that I have some suspicions concerning the matter. But we have the direct testimony of Clarence E. Edmondson as to the contract, and the direct testimony of the bankrupt concerning the contract, and nothing to disprove it except that the amount seems entirely out of proportion to the services rendered. Yet we are not justified in saying that the claim is fraudulent, because the bankrupt made an improvident contract with his nephew. It may be argued that the plan to thus enhance the services of the nephew was a part of a general scheme begun at the very inception of the business to enrich the various members of the bankrupt's family at the expense of the creditors. This feature of it I will mention further along in the examination of the claim of Charles W. Flick. Clarence E. Edmondson maintains that his claim should be allowed by the trustee as a preference, and paid in full. The bankruptcy act, by section 64b, subd. 4, provides that wages due to workmen, clerks, or servants, which have been earned within three months before the date of commencement of proceedings, not to exceed $300, shall have priority. The petition of the creditors was filed December 22, 1899. Three months prior thereto would be September 22d. Clarence E. Edmondson served as clerk from September 22d to December 11th, 11½ weeks, at the rate of $20 per week, which amounts to $230. During that time he received in cash $60, as shown by his account on pages 71 and 72 of the ledger of the bankrupt. But, as shown by page 234 of the ledger, from October 3d to October 18th he was paid in merchandise $208.40, upon which merchandise account he paid in cash $11, leaving a balance

against him on account of the merchandise received in the month of October of $197.40, which, together with the cash received by him, amounts to $257.40, which he received in cash at $5 per week, and in merchandise within the period of three months prior to the beginning of the action. I am not clearly convinced that the employment as salesman and purchasing agent, and the performance of such duties as devolved upon Clarence, would constitute him a clerk under the bankruptcy act, and thereby give him priority over general creditors. The strict meaning of the word 'clerk' is a person employed to keep accounts or do writing, or hired about an office or counting house, or the like. It is true that the bankruptcy act itself defines 'wage-earners' as an individual who works for wages, salary, or hire at a rate not to exceed $1,000 a year. But section 64 does not speak of wage-earner, but of workmen, clerks, or servants. I do not think it would be claimed that Edmondson would come within the term 'workman' or 'servant,' and it remains to be determined whether the word 'clerk' includes what is more properly known as 'salesman.' In taking the census, the United States census officers were very careful to direct the enumerators to distinguish between the clerk and the salesman,— the former being the designation of those who have charge of books or accounts; the latter, of those who sell merchandise. But I think that colloquially the term 'clerk' includes salesman, and the Standard Dictionary states that colloquially in the United States the word 'clerk' is made to include salesmen or shop assistants; and the latest edition of Webster defines a clerk as an assistant in a shop or store, and designates the definition a colloquialism. It is held in the Case of Scanlon, in the United States district court of Kentucky (2 Nat. Bankr. N. 58, 97 Fed. 26), that a traveling salesman does not come within the meaning of the terms 'workmen,' 'clerks,' or 'servants, as used in section 64b, subd. 4; and in the Case of Mayer, before Referee D. Lloyd Jones (2 Nat. Bankr. N. 719), it is held that a person selling goods for $5 per week and a commission is not a clerk entitled to priority under the section of the statute. But I am inclined to the opinion, and will so hold, that a salesman, properly speaking, will come within the term 'clerk,' and is entitled to priority, provided he has not surrendered his claim to priority or been paid in any way. But there are two reasons why this claim should not be allowed as a preference: First, that both Edmondson and Flick, the bankrupt, testified that the agreement between them was that $5 per week should be paid to Edmondson in cash, and that Flick should retain the balance to form a fund out of which to pay the expenses of a collegiate education for Edmondson. I do not understand that a person entitled to a priority as a wage-earner can allow his debtor to retain a portion of his wages under arrangements such as here existed, and then, when the debtor becomes insolvent, claim the entire amount of the wages as a priority. His lien as a wage-earner extends to wages as such, and not to his claim against his uncle for a balance of his wages which had by an arrangement between them become a debt of another class. Edmondson has received $5 per week in cash until the time of the assignment of Flick, which is the entire amount, by his agreement, that he should receive in cash. The balance is converted into a debt of another class by their agreement. The second reason why I think it should not be allowed as a preference is that, during the month of October, Edmondson received merchandise and cash in amount in excess of his salary, even at $20 per week. And, while it may be claimed that he would have the right to now apply the merchandise received by him in payment of the debt due him prior to the three months before the bankruptcy proceedings, yet nothing appears by which it can be determined that he did so apply it. In the Case of Kohn, 2 Nat. Bankr. N. 367, it has been held by D. Lloyd Jones, referee, that section 57g covers all creditors, and makes no distinction between classes; that a claim on which a creditor received a preference within the prohibited time cannot be allowed, even though it was entitled to priority. I am unable to agree with this decision, because I cannot see the reason why a claimant whose claim is entitled to priority should be compelled to refund a preference, and then immediately have it returned to him on his preferred claim. This, of course, would not be so where the fund is not sufficient to pay all the preferred claims. In that event, if one preferred claim had received a preference, section 57g would require that the preference be returned before the claim be

allowed. Section 60a provides that a person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of the creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. So that a preference to a person entitled to a priority would only be considered a preference as to other creditors entitled to the same priority, and not as to general creditors. Edmondson, for his 11½ weeks' services, performed within three months of the filing of the petition in bankruptcy, at $20 per week, is entitled to $230. During the four months prior to the petition in bankruptcy, during which preferences are prohibited, he has received in merchandise $197.40 and in cash $80, making a total of $277.40, which exceeds the amount for which he was entitled to priority by $47.40, which must be regarded as a preference upon his general claim of $269.13; and under section 57g it must be held that until he has refunded to the trustee the $47.40, which he has received as a preference upon his general claim, his claim shall be disallowed. But upon refunding the $47.40 it shall be allowed for the sum of $269.13, plus $47.40, making in all $316.53; that being the balance due on his whole period of employment after the preference is surrendered. This claim will be allowed in that amount after the surrender of the preference, as a general, and not as a preferred, claim.

### "Claim of Fred Kaufman.

"The trustee opposes the allowance of the claim of Fred Kaufman for $89.75, on the ground that a preference was allowed to Kaufman by the payment of $55 within four months prior to the beginning of the action in bankruptcy, which Kaufman has refused to surrender. In answer to this claim of the trustee, the attorney for Mr. Kaufman files an affidavit in which he states that he received the collection from a collecting agency, and never had any acquaintance or business whatever with Fred Kaufman, the owner of the claim; and claims that, because he represented a collecting agency and not the claimant, his case comes within the case of Hoover v. Wise, 91 U. S. 308, 23 L. Ed. 392. But this case was under the bankruptcy law of 1867, in which it was provided that the preference should be made with the knowledge of the claimant; and that as the attorney was acting not directly for the claimant, but for a collecting agency, the claimant could have had no notice of the insolvency. But under the present bankruptcy law it is not necessary that a claimant receiving a preference should have notice of the insolvency, and the referee holds that, under the present act, it makes no difference whether the attorney collecting money from the debtor is acting directly for the creditor or for a commercial agency which represents the creditor. Therefore it will be ordered that, unless the claimant refund to the trustee the preference received by him amounting to $55, the claim be disallowed.

### "Claim of E. C. Edmondson.

"As to this claim for $126.95, nothing appears which would convince the referee that the claim is fraudulent, even though it is held by a brother-in-law of the bankrupt. But it clearly appears from the evidence that Mr. E. C. Edmondson has received preferences on his claim within the prohibited period of four months, to wit: On October 13th, he received $50; on October 16th, $60; on November 13th, $50; and on November 21st, $50,—being a total of $210. It is true that Edmondson claims that these payments were made upon sums that were loaned for a short time, and were different in their character from the balance of his claim. But I am unable to distinguish between the character of the claims. All were for money loaned, except a small amount for merchandise, and it seems to me to make no difference whether the money was loaned for one day or for an indefinite period. And therefore the referee will hold that unless the claimant, E. C. Edmondson, refund to the trustee $210 paid to him within four months prior to the petition in bankruptcy, his claim be disallowed. I find my opinion in this matter sustained by the Case of Conhaim, in 2 Nat. Bankr. N. 148, 97 Fed. 923, where the court held that a payment of two of four promissory notes, and a part payment of the third, leaving a small balance of the third and the entire fourth note unpaid, is a

preference on the entire debt as evidenced by the four notes, and that the claimant cannot prove the one unpaid note, unless he surrender the amount paid on the two notes that were paid in full and the third that was partially paid. I consider the proposition that an innocently preferred creditor cannot share in the distribution of the bankrupt's estate, under section 57g, until he has surrendered the preference already received, too well established to need discussion. In re Conhaim, 2 Nat. Bankr. N. 148, 97 Fed. 923; In re Wise, 2 Nat. Bankr. N. 151; In re Ft. Wayne Electric Corp., 2 Nat. Bankr. N. 434, 39 C. C. A. 582, 99 Fed. 400. I find that the preferences were given while the bankrupt was insolvent, and within the period prohibited by the statute.

"In all the foregoing claims it will be ordered that the money paid as a preference be refunded within fifteen days after the service of notice upon the attorneys for the claimants of this finding of the referee, and that upon failure to refund the same within the fifteen days the claims be finally disallowed.

### "Claim of Charles W. Flick.

"The most difficult matter, and that which has most embarrassed the referee, is the claim which was filed by Charles W. Flick, a brother of the bankrupt. The account filed by Charles W. Flick is practically all for money loaned between the 1st day of December, 1898, and the 21st day of August, 1899, amounting to $8,027.16. In addition to that there was loaned by Charles W. Flick to his brother, Claude, at a subsequent date, the sum of $200, which Charles designates as a short-time loan, and which was repaid by the bankrupt to his brother between October 24th and November 6th. Charles W. Flick files on April 19, 1900, what he calls a 'supplemental claim,' in which he states that the two accounts are separate and distinct; that the claim for $8,027.16 was closed on or about August 21st, and that thereafter he made short personal loans to his brother, amounting to $200, which was borrowed for a few days, and repaid by the bankrupt within four months of the filing of the petition in bankruptcy; that he made no charge of the $200 in his claim, and gave no credit, for the reason that it was not considered by him or the bankrupt as any part thereof. And claimant comes in good faith, not desiring any preference over creditors of the bankrupt, and authorizes the court to deduct and subtract from any dividend allowed him on his said claim the amount of said $200. As a matter of fact, the claimant has not paid to the trustee the $200, and I do not regard his offer to allow it to be deducted from any dividend payable to him to be a compliance with section 57g, which provides that the claims of creditors who have received preferences shall not be allowed unless said creditors shall surrender their preferences. Under the rule laid down in Re Conhaim, 2 Nat. Bankr. N. 148, 97 Fed. 923, it is not possible for the claimant to separate the items of his claim against the bankrupt by merely showing that at a certain time, to wit, August 21, 1899, the old account was closed, and that the subsequent loan was a different account. The $200 paid by the bankrupt within the prohibited period will be considered as a preference upon the entire debt, and the claimant must surrender and pay to the trustee the $200 before his claim can be allowed. * * *

"I have hesitated long in announcing my opinion in this case, thinking that possibly I might be able to reconcile the facts with the claims of the bankrupt and his brother, but in this I have failed, and now must reluctantly hold that the claim of Charles W. Flick be disallowed. I do not think that it is the province of the court to sift out any portion of the claim which may be a valid one from that which is invalid. I have no doubt that a portion of the money was paid as claimed in the account, but, the claimant having attempted to take advantage of the other creditors by padding his account, he stands in no position to have it allowed for any sum whatever. Every person seeking any benefits under the bankruptcy law must act in the utmost good faith, and, if a creditor attempts to obtain any advantage over any other creditor by fraudulent conduct, he must suffer the consequences. All creditors are supposed to stand upon an equal footing before the law, and the act is replete with provisions which seek to secure equality for all creditors. Under section 57g, the claim of any creditor who has innocently received a preference must be disallowed until the preference is surrendered. Certainly it is within the intent, if not the strict letter, of the act that he who has attempted to receive a preference by fraud shall not be allowed to participate in the fund distrib-

uted. The presentation of a false claim, by section 29b, cl. 3, is made a penal offense, which shows how the law would regard one guilty of such an act. In re Elder, Fed. Cas. No. 4,326; Marrett v. Atterbury, Fed. Cas. No. 9,102; In re Stevens, Fed. Cas. No. 13,365. It is therefore ordered that the claim of Charles W. Flick be disallowed."

Sherman T. McPherson and Wm. E. Bundy, for Claude W. Flick.
Stafford & Arthur, for trustee.
Keifer & Keifer, for creditors.

THOMPSON, District Judge. I have not considered all the questions discussed by the referee, but his order disallowing the claims above mentioned is affirmed.

---

PHAIR et al. v. UNITED STATES. SCHROEDER v. SAME. MERCK et al. v. SAME.

(Circuit Court, S. D. New York. May 24, 1900.)

Nos. 2,923, 2,950, and 2,922.

CUSTOMS DUTIES—CLASSIFICATION—CHLORAL HYDRATE.

Chloral hydrate and salol are dutiable under paragraph 68 of the tariff act of 1897, as medicinal preparations in the preparation of which alcohol is not used, not specially provided for, and not under paragraph 67, as medicinal preparations in the preparation of which alcohol is used, not specially provided for; alcohol not being necessarily used in their preparation.

Appeals by the Importers from Decisions of the Board of General Appraisers.

Albert Comstock, for importers.
Chas. D. Baker, Asst. U. S. Atty.

TOWNSEND, District Judge (orally). The articles in question are chloral hydrate and salol, and were assessed for duty under paragraph 67 of the act of 1897 at 55 cents a pound, as "medicinal preparations, in the preparation of which alcohol is used, not specially provided for." The importers claimed in their protests that they were dutiable at 25 per cent. ad valorem, under paragraph 68 of said act, as "medicinal preparations, in the preparation of which alcohol is not used, not specially provided for." In view of the decisions in U. S. v. Battle, 4 C. C. A. 249, 54 Fed. 141, Schering v. U. S. (No. 2,137), and Engelhorn v. Same (No. 1,237), I feel obliged to reverse the decision of the board of general appraisers.

---

BLISS v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. December 19, 1900.)

No. 337.

1. COUNTERFEITING—FORMER CONVICTION—DISTINCT OFFENSES.

The counterfeiting of notes at different times, although all apparently of the same series and printed from the same plate, constitutes distinct offenses, and a conviction for one is no bar to a prosecution for the other.

2. SAME—AIDING AND ABETTING—NECESSITY OF CONVICTION OF PRINCIPAL.

It is not necessary to the conviction of a defendant indicted under Act May 16, 1884, c. 52, § 1 (23 Stat. 22), for aiding and abetting another in counterfeiting notes of a foreign government, intended to circulate as