### In re BOWMAN HARDWARE & ELECTRIC CO.
### No. 1797.

District Court, E. D. Illinois.
Dec. 5, 1932.

W. A. Doss, of Monticello, Ill., for claimant Miller.

E. J. Hawbaker, of Monticello, Ill., for claimant Van Camp.

LINDLEY, District Judge.

Claimant seeks a review of an order of the referee directing postponement of allowance of his claim until claims of other creditors have been paid.

The bankrupt started a retail hardware business in Monticello, Ill., in 1923. He borrowed moneys from claimant from time to time, until at the time of bankruptcy, including interest and "commission," the total amounted to over $20,000. The bankrupt agreed to pay 7 per cent. interest and 2 per cent. of his gross purchases per year from wholesalers as "commission." Later this was reduced to 1 per cent. Part of same was paid, but a large amount was included in the principal.

At the time of the loan and at all times thereafter claimant instructed the bankrupt to disclose to no one, at any time or place or under any circumstances, this indebtedness. This instruction was followed, and bankrupt at all times concealed the debt.

The referee found that the facts aforesaid worked a fraud upon wholesalers, selling upon credit to bankrupt, in reliance upon statements or credit information, omitting any mention as to such debt. He held the facts sufficient to show a scheme to hinder, defraud, and delay the creditors, and ordered that payment of the claim be postponed until after other creditors were paid in full. It is insisted by the trustee and creditors that said order should be sustained upon the ground stated and the further ground that an undetermined part of claimant's claim is illegal as usurious, and the entire claim therefore invalidated. Claimant insists that such order is erroneous upon any view of the evidence.

Fraud is deception brought about by misrepresentation of fact or silence when good faith requires expression, resulting in material damage to one who with right so to do relies upon the same. The one accused of fraud must have been in such a situation that in good faith he should not have concealed the undisclosed facts.

The modern mercantile system usually contemplates purchases of stocks of merchandise upon credit. Whether wholesalers will sell goods to a retailer upon account will depend eventually upon whether the wholesaler believes the retailer worthy of credit. Such belief grows out of a number of salient facts, viz. the personal character and health of the retailer, his apparent prosperity or lack of same, the amount and value of his assets, the amount of his liabilities, and other facts bearing upon the crucial question as to probability of payment if sale is made. Dunn and Bradstreet maintain extensive organizations for investigation of all facts bearing upon credit, including accurate statements as to assets and liabilities. Most wholesale houses, selling any considerable amounts of merchandise, require accurate, detailed statements of the financial condition of the proposed purchaser. These practices and the well-known usages common to modern mercantile credit system are generally known to and recognized by the public.

Consequently, if a man loans considerable amounts to a dealer for investment in the latter's retail business, he does so charged with notice of the practices aforesaid. He knows that wholesalers selling on credit will require of the retailer accurate, detailed information as to his debts. He knows that commercial agencies will obtain and publish broadcast financial ratings based upon the retailer's statement of his debts. With such knowledge the claimant was charged in this case. When, therefore, he warned the bankrupt to disclose to no one the latter's indebtedness to claimant and instructed the borrower that he should at all times and under all circumstances keep such indebtedness covertly secret, he knew that, if such instructions were obeyed, no wholesalers would be able to learn from any source that the dealer owed for borrowed money more than his stock of merchandise was worth. He knew that financial statements of the bankrupt would not disclose such eloquent fact.

What was the result of these facts? Wholesalers relied upon inaccurate Dunn and Bradstreet statements and debtor's statements, all of which, if accurate, would have shown insolvency for many years. The claimant is presumed conclusively to intend that which is the reasonable consequence of his acts. He may not have had any positive intent to defraud others, but, if such was the result reasonably to be anticipated from this action, he is, by law, charged with responsibility therefor. Consequently, when wholesalers were induced to rely upon a false premise to their material damage, claimant cannot, in spite of the deception induced by him, share in the assets of the bankrupt with such wholesalers. The principles of legal estoppel apply and necessitate a postponement of dividends to claimant until payment of the other debts has been made in full. In re Headley (D. C.) 97 F. 765; In re Paris Modes Co., 196 F. 357 (C. C. A. 2); In re Flick (D. C.) 105 F. 503.

The claimant and the bankrupt having been parties to a scheme to hinder, delay, and defraud the creditors of the bankrupt, the claim of claimant, a party to such scheme, must be disallowed. That such estoppel goes against claimant's entire claim is apparent from the reasoning of other courts. Section 29b, cl. 3, of the Bankruptcy Act, 11 USCA § 52 (b) (3), forbids the filing of fraudulent claims.

Thus, in Re Friedman (D. C.) 164 F. 131, 140, where certain relatives had secretly advanced money to the bankrupt, and he had, pursuant to that fact, concealed his financial condition, and the court found evidence that the claimants were aware of his action or authorized it, it was held that the claims for borrowed money must be disallowed in toto. The court said:

"Upon this principle, if the evidence shows co-operation of these claimants with the bankrupt to conceal the true condition of the business and the insolvency of the bankrupt, then these claimants would be equally bound by the fraudulent statements and practices of the bankrupt. * * * The conclusion is irresistible that these large sums of money, raised with such difficulty, were intended to give the bankrupt a fictitious rating in commercial circles. It was to conceal his true condition, and hold him out to the public as possessed of such means that he was able to discount his bills. * * * It is urged, however, with great confidence that, inasmuch as the evidence shows that the several sums of money represented by the notes were in fact advanced to the bankrupt, therefore these claims must be allowed. It would be a new doctrine, indeed, if a court of equity were called upon to hand back conspirators money which they have embarked in a fraudulent scheme and by means of which the fraudulent purpose has been effectuated. It has been repeatedly held that, where a fraudulent conveyance is set aside by a court of equity, no accounting is to be taken of the money which the fraudulent grantee has actually invested to secure the fraudulent conveyance. This contention of claimants is disposed of by the following authorities: Ferguson v. Hillman, 55 Wis. 181, 190, 12 N. W. 389, is a leading case, where a large number of authorities to the same effect are collated and cited in the opinion. This doctrine was adhered to in Bank of Commerce v. Fowler, 93 Wis. 241, 245, 67 N. W. 423. See, also, In re Flick (D. C.) 105 F. 503, Burt v. [C.] Gotzian [& Co.], 102 F. 937, 43 C. C. A. 59, and Lynch v. Burt, 132 F. 417, 67 C. C. A. 305, both of which were decisions of the Circuit Court of Appeals of the Eighth circuit. The theory of these cases is that when a creditor participates in a scheme to defraud other creditors, and in furtherance thereof advances money or incurs expense, the entire transaction is contaminated by the fraud, and a court of equity will not practically pay a bonus upon the fraud by returning such advance or expense."

That the last-mentioned case defines the law as interpreted in this circuit appears in the comparatively recent decision of Levin v.

Johnson (C. C. A.) 7 F.(2d) 885, where the petitioner's loan was usurious, and the court said:

"Petitioner's contracted compensation for this loan—be it called commission, interest, or what not—exceeds the rate of well over 40 per cent. per annum. This on its face we consider so glaringly and obviously harsh and oppressive that the bankruptcy court, wherein the principles of equity prevail, will not aid petitioner to enforce it."

In the case of In re Flick (D. C.) 105 F. 503, the referee refused to allow a claim because of fraudulent intent, and Judge Thompson upon review affirmed the order.

The order of the referee disallowing the claim of claimant was fully warranted, and is hereby approved and confirmed.