In re DEXTER. In re NEW ENGLAND THREAD COMPANY. Ex parte BARDEN.

(Circuit Court of Appeals, First Circuit. December 20, 1907.)

No. 742 (Original).

1. BANKRUPTCY—DEBTS ENTITLED TO PRIORITY—WAGES OF "TRAVELING SALESMAN."

Claimant was employed by the bankrupt as a salesman under a contract which assigned him certain territory and cities throughout the country in which he obligated himself to take proper care of the trade. He was paid entirely by a commission on sales made, and established an office in Boston at his own expense. A circular was sent out by the bankrupt announcing his employment as its special representative in the United States, and directing that all orders be sent to his office. He exercised full discretion as to when and where he should travel and also received orders at his office. *Held*, that he was a traveling salesman within the meaning of Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], as amended Act June 15, 1906, c. 3333, 34 Stat. 267 [U. S. Comp. St. Supp. 1907, p. 1034], and entitled to priority thereunder for commissions earned within three months prior to the bankruptcy not exceeding $300.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 536.

For other definitions, see Words and Phrases, vol. 8, pp. 7082, 7820.] •

2. SAME—"WAGES."

Commissions paid to a traveling salesman for his services are "wages," within Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], as amended Act June 15, 1906, c. 3333, 34 Stat. 267 [U. S. Comp. St. Supp. 1907, p. 1034].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 536.

For other definitions, see Words and Phrases, vol. 8, pp. 7369–7373, 7831.]

Petition for Revision of Proceedings of the District Court of the United States for the District of Massachusetts, in Bankruptcy.

Mendell W. Crane (Roscoe M. Dexter, on the brief), for petitioner. Hugh J. Carroll, for respondent.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

COLT, Circuit Judge. This petition for revision presents the single question whether the District Court erred in allowing priority in the sum of $300 to the claimant, Thomas H. Barden, as a traveling salesman, employed by the bankrupt, the New England Thread Company. Among the debts entitled to priority under section 64b of the Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], as amended June 15, 1906, c. 3333, 34 Stat. 267 [U. S. Comp. St. Supp. 1907, p. 1034], are:

"(4) Wages due to workmen, clerks, traveling or city salesmen, or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed three hundred dollars to each claimant."

The District Court held, first, that Barden's compensation was "wages" within the meaning of this provision; and, second, that he was a "traveling or city salesman" within the meaning of this provision.

The contract under which Barden was employed reads as follows:

"Articles of agreement, made and entered into on the 5th day of December, A. D. 1905, by and between the New England Thread Co., a corporation lawfully existing and doing business in the city of Pawtucket, county of Providence and state of Rhode Island, hereinafter known as the first party, and Thomas H. Barden of the town of Hyde Park, county of Norfolk and state of Massachusetts, hereinafter known as the second party. * * *

"Witness: * * * That the second party agrees that he will during the terms of this agreement diligently and faithfully serve the first party, in the capacity of salesman in its business of manufacturing threads, tapes and other materials, and will therein perform the reasonable directions of said first party without disclosing any of the secrets of his employment or of said business to any person whatsoever.

"And the second party furthermore covenants and agrees that he will devote all the time necessary to the proper care of the trade in the territory mentioned herein, and that during the term of this contract he will not engage in the sale or manufacture of threads or tapes or any other materials that the said first party may be making at the time, with any other concern.

"And the said first party covenants and agrees that in remuneration for said services, it will pay to the second party, a commission of 5 per centum on all sales made in the territory and to the class of trade mentioned below, said commission to be paid on the 20th of each month for shipments made during the previous month.

"Sales of second party to be confined to the dry goods, notion and tailor trimming trade, in the following territory: The states of Maine, New Hampshire, Vermont, Massachusetts, Connecticut, Rhode Island, and cities of New York, N. Y., Syracuse, N. Y., Rochester, N. Y., Buffalo, N. Y., Cleveland, O., Nashville, Tenn., Brooklyn, N. Y., Cincinnati, O., Chicago, Ill., Indianapolis, Ind.; Pittsburg, Pa., Omaha, Neb., Kansas City, Mo., Denver, Col., Louisville, Ky., Memphis, Tenn., New Orleans, La., St. Joseph, Mo., Albany, N. Y., Allegheny, Pa., Camden, N. J., Dayton, O., Duluth, Minn., Elizabeth, N. J., Erie, Pa., Evansville, Ind., Grand Rapids, Mich., Harrisburg, Pa., Hoboken, N. J., Jersey City, N. J., Milwaukee, Wis., Minneapolis, Minn., Newark, N. J., Paterson, N. J., Peoria, Ill., Reading, Pa., Richmond, Va., Scranton, Pa., St. Paul, Minn., Toledo, O., Trenton, N. J., Troy, N. Y., Utica, N. Y., Washington, D. C., Wilmington, Del., Wilkesbarre, Pa."

"Also such other territory as may be decided upon later, verbally or in writing, by the parties hereto.

"This agreement to become effective January 1st, 1906, and to remain in force for a period of two years from that date and thereafter until terminated by three months written notice from either party to the other."

The additional facts, as found by the referee, may be summarized as follows:

Barden engaged an office at 77 Summer street, Boston, and gave to the business of the New England Thread Company his whole time. The company sent out a trade circular announcing the engagement of Barden as its special representative in the United States, and directing that all orders should be sent to his Boston office to receive prompt attention, and further setting forth that his experience was at the service of the trade, and would be used fully as much in the interests of the customers as of the company. Barden testified that he had no other income from any source; that he sent a weekly list of sales in his territory to the company; that he was supplied by the company with a price list, from which he made his sales; that he was also supplied with a card bearing his name as special representative in the United States of the New England Thread Company; that he had earned during the first year of the contract $4,000, and expected to do very much better than this during the second year if the company could have filled its orders. It also appeared that the office was hired by Barden personally, and the rent and all other office expenses, such as stenographer, telephone, and office supplies, were paid by him personally; and that the company in no way advanced him money for expenses. It further appeared that Barden called at the factory of the company as often as once a month, and used full and unlimited discretion as to when he was to travel and what routes to follow, and that he was not under the direction of any one employed by the company. The itemized bill filed by Barden in connection with his proofs shows sales in widely different parts of the United States on the same day; and it follows from this, as the referee finds, "that many of these sales could not have been made by Barden personally, but must have been upon orders taken either by others or sent by mail to his office in accordance with the instructions in the trade circular."

We will first consider the question whether, upon the facts here presented, Barden can be fairly classed as coming within the category of traveling salesmen.

A traveling salesman, as commonly understood, may be defined as a man who travels about the country soliciting orders for goods, which orders are sent to his employer for approval. This is the primary service for which he is employed, and it measures the full extent of his responsibility. He is not employed or authorized to fix prices. He cannot pass upon the credit or standing of customers. He does not collect accounts. He is not responsible for the quality, condition, or delivery of the goods. He makes no personal contracts, and he has no other interest in the sales than his compensation for those which are approved by his employer. But, while the field of service and responsibility of traveling salesmen is limited, the agreements which they make with their employers vary greatly in such details as the

form of compensation, the extent of territory, and in many other particulars. A traveling salesman may be paid a fixed sum per day, week or month, or a yearly salary, or a commission on the amount of goods sold, or both a fixed sum in the form of wages or salary, and, in addition thereto, a commission on the amount of goods sold when the sales exceed a certain amount. The territory assigned to him may be confined to a single city or state, or it may cover many cities or states. Commonly, the employer pays the salesman's expenses, but sometimes, especially if he works for a commission, he pays his own expenses. Sometimes the employer has a list of customers, and the salesman receives a commission upon all orders sent in by those customers. Sometimes he is allotted a certain territory, and he receives a commission upon all sales which are sent in from that territory. In some cases the employer may direct the routes he is to travel, and in other cases the salesman chooses his own routes. Sometimes the salesman sends the orders directly to his employer, and sometimes the customers themselves send in the orders to the employer.

We do not think any of these details takes a man out of the category of traveling salesman, because, under all these different arrangements, the service and responsibility of the salesman are substantially limited to the obtaining of orders in a certain territory, and having them sent to his employer. Tested by this rule, we think that Barden was a traveling salesman. The contract shows that he was hired as a "salesman," that his service was confined to a certain territory, and that his responsibility began and ended with the obtaining of orders in that territory from a price list furnished by the company, and having them sent in to his employer. That some of these orders were not solicited by Barden personally, but must have been taken, as the referee finds, "either by others or sent by mail to his office in accordance with the instructions in the trade circular," is not a circumstance which is sufficient to take Barden out of the category of traveling salesman, since a traveling salesman is sometimes entitled to commissions upon all the orders which are sent in from his allotted territory. Nor do the other facts, that Barden had an office in Boston and paid the expenses incident thereto, that all orders were first sent to this office, and that in the trade circular sent out by his employer he was called "its specially authorized representative in the United States," change in any material way the real character of the service for which he was employed.

The remaining question is whether the word "wages" in any way limits the class of traveling salesmen who are included within this provision of the bankruptcy act. If this provision had been restricted to "workmen" and "servants," it might perhaps be urged that "wages" should be construed in its narrow and popular sense as meaning the payment of a fixed sum per day, week, or month for manual labor, or other labor of a menial or mechanical kind. But since this provision also includes "clerks" and "traveling or city salesmen," if we construe "wages" in this narrow sense we necessarily limit the operation of the statute to those clerks and traveling salesmen who happen to be paid for their services in a particular way; in other words, the question of preference is made to turn upon the mode of payment rather

than upon the kind of service rendered. The result would be that a clerk who was paid a fixed sum per day, week, or month, which during the year amounted to $1,000, would be entitled to a preference, while a clerk who was paid this sum in the form of a yearly salary would be excluded; and, further, a traveling salesman who was paid a fixed sum of $100 or $500 a month would be entitled to a preference, while a traveling salesman who only earned from $30 to $40 per month in the form of commissions would be excluded. It is plain, therefore, that "wages" must be construed in its broader and more general sense as meaning compensation for services rendered, since to hold otherwise would lead to glaring inconsistencies and manifest injustice.

There is a general argument of some force which has been brought to our attention against any construction of this provision which would include the present claimant. This argument is that Congress intended by this provision to carry out the policy of the law of giving a preference to those who serve in a subordinate or menial capacity, and who are therefore presumed to be dependent upon their earnings for their present support; and, such being the intention of Congress, this provision should not be held to cover the case of a man who earns $4,000 a year as commissions for selling goods. While this argument is plausible, it will not bear analysis. Had Congress intended to give a preference only to a subordinate class of clerks and traveling salesmen, it should have so framed the statute as to limit the preference to clerks and traveling salesmen who received a comparatively small compensation for their services, and should not have used language which applies equally to all classes of clerks and traveling salesmen, without regard to the amount of their remuneration.

The decree of the District Court allowing the preferred claim of Thomas H. Barden is affirmed, with costs for Thomas H. Barden, the respondent, in this court.