In re HERBERT CANDY CO.

No. 21518.

District Court, E. D. Pennsylvania.

March 12, 1942.

Harry E. Shrager, of Philadelphia, Pa., for claimant.

Herman N. Silver, of Philadelphia, Pa., for trustee.

Howard Benton Lewis, of Philadelphia, Pa., Referee in Bankruptcy.

KALODNER, District Judge.

This matter comes before the court on a Petition for Review of the Referee's Order of June 17, 1941, reducing to the sum of $1,083.07 the Proof of Claim filed by Samuel Gleit in the amount of $2,316.33 for commissions earned as a traveling salesman for the bankrupt company from November, 1939, to October 21, 1940, on which date the petition in bankruptcy was filed. Out of the total of $2,316.33, Gleit claimed $325.38 as a priority under Section 64, sub. a(2), of the Bankruptcy Act, 11 U.S.C.A. § 104, subd. a(2), as amended June 22, 1938, c. 575, § 1, 52 Stat. 874, for commissions earned within three months of bankruptcy, and the balance of $1,990.95 as a general claim.

The Trustee in Bankruptcy filed objections to the Proof of Claim on the ground that the claimant was not an employee of the bankrupt; that he was not entitled to priority; and that the amount due him was $1,083.07. The Referee sustained the Trustee's objections, allowing the sum of $1,083.07 as a general claim.

The bankrupt company was engaged in the business of manufacturing and selling candy and, in the disposition of its products, used what are commonly known in the trade as "candy brokers"—i. e., individuals who solicit orders from retail candy stores for the various firms which they represent, on which orders they are entitled to commissions.

The claimant avers that he was employed as a traveling salesman by the bankrupt concern, whereas the Trustee alleges that he was not a salesman, but an independent contractor or "sales broker".

Additionally, claimant avers that he was employed at a commission of 5 per cent. on net sales, while the Trustee alleges that the commission was 2½ per cent. of net sales.

Two questions are therefore presented in this Petition for Review:

(1) Was the claimant a traveling salesman employed by the bankrupt concern and, therefore, entitled to priority as to any portion of his commission as a "wage-earner" under Section 64, sub. a(2) of the Bankruptcy Act, supra—or was he an independent contractor or sales broker?

(2) Is the claimant entitled to 5 per cent. commission or 2½ per cent. commission?

■ As to the latter question, which may be immediately disposed of, the Referee found that the claimant was entitled to a commission of 2½ per cent. The evidence was in conflict, and involved purely a question of fact. No purpose can be served by reviewing the conflicting testimony. The Referee heard and saw the witnesses, and the court is not inclined to disturb his findings or to substitute its judgment for his: General Order in Bankruptcy 47, 11 U.S.C.A. following section 53—In re International Chewing Gum Co. (Freedman v. Brown), D.C., 38 F.Supp. 662.

Now, as to the first question: The Referee found that the claimant was not entitled to priority for any part of his claim because " * * * it was indispensably necessary to his priority here that he establish that the relationship of employer and employee existed between himself and this bankrupt" and he was unable to find that such relationship existed.

■ As to this finding, the Referee was in error.

Section 64, sub. a(2), of the Chandler Act, 11 U.S.C.A. § 104, sub. a(2), provides:

"§ 104. Debts which have priority

"a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (2) wages, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, *or traveling or city salesmen on salary or com-*

*mission basis, whole or part time, whether or not selling exclusively for the bankrupt."* (Emphasis supplied.)

The testimony established that the claimant was a traveling salesman for the bankrupt company and for five or more other candy concerns. The bankrupt company used four or five traveling salesmen or "brokers". Claimant's territory was more or less restricted to what is known as Metropolitan Philadelphia.

There does not appear to be any foundation for the Trustee's contention that claimant was not a traveling salesman but a broker or independent contractor, except, perhaps, upon the basis of a misinterpretation of the term "broker". In behalf of the Trustee an officer of the bankrupt concern testified as follows:

"Q. Within the last two years what was Mr. Gleit's status with your company? A. *A broker selling on commissions.*

"Q. Has he a place of business? A. I don't think so.

"Q. Know whether he operates from his home? A. I don't think he has any place of business, *he is an outside salesman.*

"Q. Has he any place in your establishment? A. No."

(N.T. p. 36.) (Emphasis supplied.)

The same witness testified (N.T. pp. 36, 37) as follows: "A. A broker is a salesman who sells on commissions and pays his own expenses and receives a commission on the merchandise when delivered."

Upon cross-examination the witness testified (N.T. p. 47):

"Q. As the active manager you hired Mr. Gleit to sell candy for your concern, did you not? A. We gave him our line as a broker.

"Q. When asked by Mr. Silver * * * as to what Mr. Gleit's capacity was with the Herbert Candy Co., you first said he was a salesman, then you said salesman or broker, what did you mean? A. A broker.

"Q. You mean you want to withdraw the statement he was a salesman? A. Salesman and broker."

[3] It is true that on the bankrupt's books the claimant was designated as a "broker" and the account as "broker's commission". But this ex parte designation by the bankrupt can in no way affect the real status of the claimant: It is the nature of the actual work done by an employee, and not the title of the position held by him, which determines his right to priority for wages: In re Pacific Co-op. League Stores, 9 Cir., 291 F. 759; the test is to ascertain the work actually done by the employee, and his title is unimportant: In re Broudarge Bros. Novelty Yarn, D.C., 22 F.Supp. 891.

██ Nor can the status of the claimant be affected by the circumstances that the claimant had no social security number, or that no provision was made for social security or for workmen's compensation—if the claimant was, in fact, a salesman within the provisions of the Bankruptcy Act. The testimony discloses that the bankrupt passed on the credit of the orders obtained by the claimant; that the bills were sent out by the bankrupt; that the claimant was confined to specific territories; that the samples were supplied by the bankrupt; and that at one time the bankrupt provided its own cards and stationary for claimant, but that this practice was discontinued in order to reduce the bankrupt's operating expenses.

Webster's International Dictionary, Second Ed., Unabridged, 1936, gives the following definitions:

"*Broker.*—One who, for a commission or fee, brings parties together and assists in negotiating contracts between them. Such contracts ordinarily cover the sale of property, but real estate brokers negotiate leases, ship brokers negotiate charter parties, etc."

"*Salesman.*—One whose occupation is to sell, as goods, merchandise, land, securities, transportation, etc., either in a store or within a given territory; specif. a commercial traveler."

"*Traveling salesman.*—One who travels and solicits orders for goods; esp. one who represents a particular concern, as a wholesale house, and who often sells after exhibiting samples."

An admirable discussion of the distinction between salesman and broker appears in Hamberger v. Marcus, 157 Pa. 133, 27 A. 681, 37 Am.St.Rep. 719, where under similar circumstances the Supreme Court of Pennsylvania said (pp. 138, 139 of 157 Pa., page 682 of 27 A.):

"We cannot assent to the claim of the appellee that it is a necessary inference from the answers that the commissions were earned by a commission merchant, or broker. *'The term "broker," in its largest sense, is applied to a specialist who acts*

as the medium of negotiating and contracting any kind of bargain. *Thus, there are ship brokers, insurance brokers, real-estate brokers, etc.* The term is, however, emphatically applied to persons whose business it is to negotiate and effect contracts of sales between merchants. 2 Amer. & Eng.Ency.Law, p. 572. In most countries a person who holds himself out to the public, and engages in business as a broker, must take out a license to enable him to act as such. Whart.Ag. p. 458, § 695. In Pennsylvania, by the act of May 15, 1850 (P.L. 773), all stock, bill, exchange, merchandise, and real-estate brokers were required to pay for their respective licenses three per cent. upon the annual receipts and commissions, discounts, abatements, allowances, or other similar means in the transaction of their business.'

" 'A commission merchant or factor is an agent for the sale of goods in his possession, or consigned to him.' 3 Amer. & Eng.Ency.Law, p. 317. 'He must be a specialist; that is to say, he must be a proficient in this particular business, pursuing it as a trade.' Whart.Ag. p. 488, § 735. He has possession of the goods he is authorized to sell, and is entitled to a lien upon them for his charges and disbursements. He receives and sells goods for others, as an occupation. Being a specialist, he cannot, without his principal's consent, delegate his authority to another; but he may, and ordinarily must, employ assistants in the merely manual and clerical service pertaining to his business.

*"A traveling salesman, who exhibits samples of, and takes orders from purchasers for, his employer's goods is not, in a technical or popular sense, a broker, or factor, although he may be compensated for his services by commissions on the sales so effected by him.* * * *"* (Emphasis supplied.)

The previous Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 563, as amended June 15, 1906, c. 3333, 34 Stat. 267, gave priority in section 64, sub. b(4), to: "Wages due to workmen, clerks, traveling or city salesmen, or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed $300 to each claimant."

This section was construed in a leading case, In re Dexter (also known as In re New England Thread Company), 1 Cir., 158 F. 788, at pages 790, 791, in which the court said: "A traveling salesman, as commonly understood, may be defined as a man who travels about the country soliciting orders for goods, which orders are sent to his employer for approval. This is the primary service for which he is employed, and it measures the full extent of his responsibility. He is not employed or authorized to fix prices. He cannot pass upon the credit or standing of customers. He does not collect accounts. He is not responsible for the quality, condition, or delivery of the goods. He makes no personal contracts, and he has no other interest in the sales than his compensation for those which are approved by his employer. * * * The territory assigned to him may be confined to a single city or state, or it may cover many cities or states. Commonly, the employer pays the salesman's expenses, but sometimes, especially if he works for a commission, he pays his own expenses. * * * Sometimes he is allotted a certain territory, and he receives a commission upon all sales which are sent in from that territory. In some cases the employer may direct the routes he is to travel, and in other cases the salesman chooses his own routes. Sometimes the salesman sends the orders directly to his employer, and sometimes the customers themselves send in the orders to the employer. * * *"

See also In re Roebuck Weatherstrip & Wire Co., D.C., 180 F. 497.

Even before the passage of the Chandler Act it was uniformly held that the mere fact that the salesman was employed by others as well as by the bankrupt, or that he had other duties or occupations in addition to that of salesman, did not exclude him from priority: In re Shapiro, D.C., 300 F. 566 (which quotes In re Dexter, supra, with approval); In re Collin, D.C., 18 F.Supp. 848; National Marble & Granite Co., D.C., 206 F. 185; In re Moore, D.C.Ohio, 1920, 45 A.B.R. 388.

Section 64, sub. a(2), of the present Bankruptcy Act definitely establishes beyond question the rights of a *"traveling or city salesman on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt."* Indeed, Mr. Chandler, author of the Bankruptcy Act of 1938, stated in his report to the Judiciary Committee of the House of Representatives (III House Reports on Public Bills, 75th Congress, 1st Session, Report No. 1409, p. 14): "Section 64:

*In Clause (2) the provision is expanded to include a traveling or city salesman who may be selling one or more lines for the bankrupt, but is not selling exclusively for him. The priority would cover not only wages but commissions, as is now held in the case of salesmen working exclusively for the bankrupt.*" (Emphasis Supplied.)

Senator Mahoney made a similar report to the Judiciary Committee of the Senate, which appears in II Senate Reports on Public Bills (75th Congress, 3rd Session, Report 1916, p. 17).

 The court therefore concludes that the claimant was a traveling salesman and is entitled to priority.

 There remains to be determined the amount of the commissions due the claimant. The bankruptcy occurred on October 4, 1940. The commissions are claimed from November, 1939, to October 21, 1940, at the rate of two and one-half per cent and total $1,233.07. The claimant was paid $100 on account in May, 1940, and $50 in August, 1940, leaving a net commission due in the sum of $1,083.07. The commission earned during the period of three months immediately preceding bankruptcy amounts to $162.61. The Trustee takes the position that if a priority is allowed, the payment of $50 made to claimant in August, 1940, should be applied on account of the priority, thus making him a priority creditor only in the amount of $112.61; citing Blauvelt v. Walker, 4 Cir., 72 F.2d 915. In that case the record discloses that when the payment on account was made to the claimant the bankrupt was insolvent, and the claimant knew of this, so that the payment was a preferential one given within four months prior to bankruptcy and hence voidable. There is nothing in the record before this court in the instant case to show insolvency or knowledge of insolvency at the time of payment. As a matter of fact Judge Parker emphasizes in Blauvelt v. Walker, supra, that very distinction. Ordinarily, where the debtor does not direct the application of payments, the right of making the application is in the creditor: Maryland Casualty Co. v. City of South Norfolk, 4 Cir., 54 F.2d 1032. In Blauvelt v. Walker, supra, the court said at pages 916, 917: "A number of cases are cited as sustaining the position that a wage claimant is not required to credit payments made to him within the last three months preced-

ing bankruptcy on wages earned within that period, but is entitled to credit all the payments to the earlier items of the account. See In re Van Wert Machine Co., D.C., 186 F. 607; In re Flick, D.C., 105 F. 503; In re Andrews, 19 A.B.R. 441; In re McIntyre Bros., 21 A.B.R. 588. The rule thus stated is correct where there is no showing, as there is here, that the bankrupt was insolvent at the time of the payments and that claimant had reasonable cause to believe that so crediting them would effect a preference in contravention of the provisions of the bankruptcy act. Where there is such showing, however, a different rule applies."

I have discussed the question presented herein in some detail in view of the fact that this appears to be the first case under Section 64, sub. a(2) of the Chandler Act.

For the reasons stated the order of the referee entered on June 17, 1941, is therefore modified to read as follows:

That the claim of Samuel Gleit as filed on November 28, 1940, is allowed as a priority in the sum of $162.61 under Section 64, sub. a(2), of the Bankruptcy Act and as a general claim in the sum of $920.-46.