PRESENT:  All the Justices

GROUNDWORKS OPERATIONS, LLC
F/K/A JES OPERATIONS, LLC, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
December 30, 2025

v.  Record No. 241092

JOSEPH CAMPBELL, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal we must determine whether the wage theft statute, Code § 40.1-29, covers commissions.  The language of the statute specifically lists wages and salaries, but it does not expressly apply to commissions.  The trial court held that Code § 40.1-29 did not apply to commissions.  The Court of Appeals disagreed and reversed.  We conclude that the language of the statute and its context do not support an interpretation that extends its protections to commissions.  Therefore, we reverse the judgment of the Court of Appeals.

BACKGROUND

According to the allegations in the complaint, the five plaintiffs are former employees of JES Construction, L.L.C.  JES provides construction services such as foundation repair, water proofing, and crawl space remediation.  Groundworks Operations, L.L.C., formerly JES Operations L.L.C., is a management company that provides services to affiliated companies, including JES Construction.  For the sake of simplicity, we will refer to both defendants as JES.  Four of the plaintiffs would go to prospective customers' homes to sell construction services.  One plaintiff was responsible for repairing installations and selling additional goods and services.  JES would then perform the construction services pursuant to the contract.

Four of the plaintiffs were paid exclusively on a commission basis.  One of the plaintiffs was paid commissions as well as other compensation.  JES initially did not have a written

commission policy. The plaintiffs' commissions were paid as ten percent of the gross price of the sales they made. JES paid half of the commission once the contract's three-day rescission period had expired and the contract had become final. JES paid the remainder once the job was complete and the customer had made a final payment. The plaintiffs often experienced significant delays in receiving payment for their full commission. The delays could be caused by the engineering and permitting phases of the contract. Four of the five plaintiffs later signed an agreement with JES under which they agreed that the commissions would be paid up to 14 days after the employees no longer worked for JES. No further commissions would be paid after 14 days. The plaintiffs alleged that JES refused to pay commissions after they left the company. The plaintiffs asserted that, when they left the company, they were owed thousands of dollars in earned but unpaid commissions.

The plaintiffs filed a collective action complaint under the wage theft law, Code § 40.1-29 *et seq*. They argued that their commissions were earned after the customer's three-day rescission period ended, and that JES's refusal to pay their commissions constituted wage theft. The plaintiffs asserted that commissions constituted wages under this statute. Three of the plaintiffs also alleged that the agreement they signed with JES violated the prohibitions of Code § 40.1-29(D) (prohibiting employers from requiring an employee to forfeit "wages for time worked as a condition of employment"). Two plaintiffs left before signing this agreement.

In response, the employer filed a demurrer, contending that Code § 40.1-29 did not apply to commissions. The circuit court granted the demurrer, concluding that the statute did not cover commissions. The plaintiffs appealed to the Court of Appeals. That Court reversed, holding that the term "wages" as used in the wage theft statute applied to commissions. *Campbell v. Groundworks Operations, LLC*, 82 Va. App. 580, 583 (2024). The Court of Appeals rested its

2

conclusion on the remedial purpose of the statute, past decisions interpreting the term "wages" in other contexts, and an interpretation by an administrative agency contained in a field manual. *Id.* at 592. This appeal followed.

ANALYSIS

The issue before us is one of statutory construction. Consequently, we review the decision below *de novo. Conger v. Barrett*, 280 Va. 627, 630 (2010).

I.      OVERVIEW OF THE WAGE THEFT LAW

The General Assembly has provided statutory protections for employees whose "wages" or "salaries" are improperly withheld by their employers. Code § 40.1-29(C) (prohibiting employers from "withhold[ing] any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee"). Among other provisions, the law requires employers to establish regular pay periods and rates of pay. Code § 40.1-29(A). Salaried employees must be paid "at least once each month." *Id.* Employees who are paid on an hourly basis must be paid "at least once every two weeks or twice in each month." *Id.* The same paragraph specifies that "[u]pon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." *Id.*

In addition, "[n]o employer shall require any employee, except executive personnel, to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment or the continuance therein, except as otherwise provided by law." Code § 40.1-29(D).

3

A plaintiff who establishes a violation of the statute is entitled to recover not only his or her lost wages, but also "an additional equal amount as liquidated damages, plus interest at an annual rate of eight percent accruing from the date the wages were due" as provided in Code § 40.1-29(G), "and reasonable attorney fees and costs." Code § 40.1-29(J). However, employers who *knowingly* fail to pay wages face a penalty "equal to triple the amount of wages due," as well as reasonable attorney's fees and costs. Code § 40.1-29(J).

Code § 40.1-29(E) provides for a criminal prosecution in the event an employer "willfully and with intent to defraud fails or refuses to pay wages in accordance with this section." The classification of the crime depends on the value of the wages. When "the value of the wages earned and not paid by the employer is less than $10,000," the crime is a Class 1 misdemeanor. *Id.* If the value of the wages is $10,000 or more, or if the employer is guilty of a second or subsequent conviction, the crime is a Class 6 felony. *Id.*

The Commissioner of Labor and Industry "may institute proceedings on behalf of an employee to enforce compliance with this section, and to collect any moneys unlawfully withheld from such employee that shall be paid to the employee entitled thereto." Code § 40.1-29(F). Additionally, subsection J of the statute permits an employee to "bring an action" against the employer "individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act." Code § 40.1-29(J).

II.    THE WAGE THEFT LAW DOES NOT COVER COMMISSIONS, EITHER EXPRESSLY OR BY IMPLICATION.

The pivotal issue in this case is whether Code § 40.1-29, which expressly addresses "wages" and "salaries," also incorporates commissions. "'[T]he primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Conger*, 280 Va. at 630

4

(alteration in original) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). Under basic rules of statutory construction, we determine the General Assembly's intent from the words contained in the statute. *Vaughn, Inc. v. Beck*, 262 Va. 673, 677 (2001). In interpreting a statute, we are bound by "the plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Boynton v. Kilgore*, 271 Va. 220, 227(2006) (internal citations and quotation marks omitted).

In common parlance, wages are not synonymous with commissions.[1] Wages are generally understood to be compensation for hours worked, for a day of work, or for piece work. Commissions are payments based on a percentage of sales. Black's Law Dictionary defines "commission" as "[a] fee paid to an agent or employee for a particular transaction, [usually] as a percentage of the money received from the transaction." *Commission*, BLACK'S LAW DICTIONARY 341 (12th ed. 2024). A "wage" is "[p]ayment for labor or services, *usu[ally]* on time worked or quantity produced." *Wage*, BLACK'S LAW DICTIONARY 1898 (12th ed. 2024) (emphasis added).[2] In ordinary usage, the two are conceptually distinct. The word "usually" in

---

[1] The plaintiffs do not contend that the term "wages" is rooted in the common law of England, and as such comes freighted with an established historic meaning. *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 276 n.4 (2016) ("A statute touching on matters of common law must 'be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.'" (citation omitted)). Consequently, we construe the term according to its plain meaning.

[2] Black's Law Dictionary includes the following after a bullet point that appears at the end of the definition: "Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage received from the employer. An employer usu[ally] must withhold income taxes from wages." *Wage*, BLACK'S LAW DICTIONARY 1898 (12th ed. 2024). The dictionary specifies that "[b]ullets are used to separate definitional information (before the bullet) from information that is not purely definitional (after the bullet) such as encyclopedic information or usage notes." *Guide to the Dictionary*, BLACK'S LAW DICTIONARY xxii (12th ed. 2024). In other words, commissions

5

the definition is significant. With regard to the plain meaning of the term "wages," therefore, wages *ordinarily* are distinct from commissions, but the legislature can employ the word "wages" to encompass commissions, either expressly or contextually. It did neither here. A plain language reading of the statute, therefore, suggests that the General Assembly did not intend to include commissions in the statute, because the word is not in the statute.

This conclusion is reinforced by the fact that the General Assembly often has been quite specific in employing the term commissions alongside wages. Although the following is not an exhaustive catalog of statutes, it is certainly illustrative:

- Code § 6.2-1526(A) (regulating consumer finance companies) ("A valid assignment or order for the payment of future salary, *wages, commissions*, or other compensation for services may be given as security for a loan made by any licensee") (emphasis added);

- Code § 8.01-512.3 (garnishment summons form) ("Earnings can be salary, hourly *wages, commissions*, bonuses, or otherwise.") (emphasis added);

- Code § 20-108.2(C) (guideline for child support) (**"**For purposes of this section, 'gross income' means all income from all sources, and shall include, but not be limited to, income from salaries, *wages, commissions*, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits except as listed below, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, spousal support, rental income except as listed below, gifts, prizes, or awards.") (emphasis added);

- Code § 34-4.2(A) (additional homestead exemption for parents of dependent children) ("For purposes of this section, 'household gross income' means all income from all sources, and shall include, but not be limited to, salaries, *wages, commissions*, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, child support, spousal support, rental income, gifts, prizes or awards paid to any adult living in the household or to the dependent child.") (emphasis added);

- Code § 60.2-229(A) (unemployment compensation) ("'*Wages*' means all remuneration paid, or which should have been paid, for personal services, *including commissions*,

and wages usually are distinct, but there are instances in which the term wages can be interpreted to also cover commissions.

6

bonuses, tips, back pay, dismissal pay, severance pay and any other payments made by an employer to an employee during his employment and thereafter and the cash value of all remuneration payable in any medium other than cash.") (emphases added); and

- Code § 63.2-1900 (child support enforcement) ("'*Income*' means any periodic or other form of payment due an individual from any source and shall include, but not be limited to, income from salaries, *wages, commissions*, royalties, bonuses, dividends, severance pay, payments pursuant to a pension or retirement program, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, spousal support, net rental income, gifts, prizes or awards.) (emphases added).

Moreover, Code § 40.1-28.7:8, which limits covenants not to compete, provides that "[f]or the purposes of this section, 'low-wage employee' *shall not include* any employee whose earnings are derived, in whole or in predominant part, from *sales commissions*, incentives, or bonuses paid to the employee by the employer." (Emphases added). That language is expressly limited to that Code section.

The treatment of wages and commissions in so many statutes indicates the following: (1) there is no uniform treatment of the concept of wages throughout the Code; and (2) the General Assembly often views wages and commissions as distinct concepts and addresses them specifically in a range of statutes. Nevertheless, it is also clear that the General Assembly knows how to draft a statute so that it includes the term "commissions." Against this backdrop, the omission of the term commissions from Code § 40.1-29 indicates that the General Assembly did not intend to include them within the scope of the statute. *See, e.g.*, *Morgan v. Commonwealth*, 301 Va. 476, 482 (2022) (observing that "when the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code, the Court must presume that the difference in the choice of language was intentional"; that "under these circumstances, it is evident that the General Assembly knows how to include such language in a statute to achieve an intended objective";

7

and concluding that "therefore, [the] omission of such language . . . 'represents an unambiguous manifestation of a contrary intention'") (alterations omitted) (collecting cases).

Even if the General Assembly did not expressly mention commissions in Code § 40.1-29, the statutory context might signal a legislative intent to employ the term "wages" broadly. Here too, however, we discern no legislative intent to depart from the usual, commonly understood distinction between wages and commissions. Code § 40.1-2 defines an "employee" as "any person who, in consideration of wages, salaries, or commissions, may be permitted[] . . . by any employer to engage in any employment directly or indirectly." This definition applies to all sections within Title 40.1 "unless the context clearly requires otherwise." Code § 40.1-2. Therefore, at the outset, the definition of "employee" distinguishes between three types of compensation: "wages, salaries, or commissions." *Id.* And Code § 40.1-29 does not suggest that wages should be interpreted in its broadest sense. Instead, Code § 40.1-29 employs two distinct terms, "wages" and "salaries." If the General Assembly had intended to use "wages" to broadly incorporate all forms of compensation, it is not clear why it would also mention salaries. We have long held that courts "ordinarily resist a construction of a statute that would render part of a statute superfluous." *Davis v. MKR Dev., LLC*, 295 Va. 488, 494 (2018); *Dilliard v. Tomlinson*, 15 Va. (1 Munf.) 183, 205 (1810) (same). Furthermore, Code § 40.1-29 contains detailed provisions about an employer's obligations with respect to wages and salaries, such as how and when wages and salaries should be paid. But the statute contains no such language addressing commissions, indicating that the General Assembly did not intend to include commissions in its scope.

Neither the plain meaning of the terms "wages" or "commissions," nor the use of the term wages in the context of Code § 40.1-29, suggests that the use of the term "wages" sweeps in

8

the concept of "commissions." The most plausible reading of Code § 40.1-29, therefore, is that the General Assembly did not intend for the wage theft statute to apply to commissions.

The plaintiffs contend that this statute is remedial, and therefore it should "be construed liberally to remedy the mischief to which [it is] directed in accordance with the legislature's intended purpose." *Carmel v. Hampton*, 241 Va. 457, 460 (1991). Assuming it would be proper to resort to canons of construction, however, Code § 40.1-29 also contains criminal prohibitions. A criminal statute "must be strictly construed." *Jimenez v. Commonwealth*, 241 Va. 244, 251 (1991). A statute cannot simultaneously be interpreted broadly and narrowly. Under the circumstances of this particular statute, these canons are offsetting.

The plaintiffs also correctly point out that in past cases Virginia appellate courts have defined wages broadly. None of those cases, however, construe the statute at issue. Nor do they purport to fashion a universally applicable broad definition for "wages" that would incorporate commissions. For example, in an 1889 case, we examined whether an act giving railroad employees a priority lien on railroad equipment violated the Virginia Constitution's "single object" rule, currently found in Article IV, Section 12 of the Virginia Constitution. In that context, we defined wages as "a compensation given to a hired person for his or her services." *Fidelity Insurance, Trust & Safe Deposit Co. v. Shenandoah Valley Railroad Co.*, 86 Va. 1, 8 (1889) (citation and italics omitted). The decision does not address wages versus commissions. The Court of Appeals mentioned the definition of wages from *Fidelity Insurance* in *Commonwealth of Virginia/Department of Transportation v. Swiney,* 23 Va. App. 467 (1996). In that case, the Court of Appeals held that "payments made under the Workforce Transition Act (WTA) are not 'wages' for purposes of the Workers' Compensation Act" because WTA payments were not for work or services rendered to the employer." *Id.* at 468-69. Again, the

9

Court of Appeals did not purport to address whether commissions are generally encompassed within the concept of wages, and it did not address the wage theft statute. These cases offer scant support for the proposition that the use of the term wages throughout the Code generally includes commissions.

The plaintiffs and amicus present a number of thoughtful policy arguments for why the wage theft statute should also cover commissions. These arguments are best addressed to the General Assembly. "Whether an enactment is wise, and matters of policy, are questions for the legislative branch of government, and not the judicial branch." *Horner v. Dep't of Mental Health, Mental Retardation, & Substance Abuse Servs.*, 268 Va. 187, 193 (2004). "Our proper role is to interpret law and not to express our opinion on policy." *Howell v. McAuliffe*, 292 Va. 320, 326 (2016). As we have previously noted, "our interpretation [of a statute] does not turn on 'the public policy implications associated with' the words chosen by the General Assembly because 'the legislature is the author of public policy,' and thus, 'we may not extend the meaning of a statute simply because it may seem to us that a similar policy applies.'" *Verizon Va. LLC v. State Corp. Comm'n*, 302 Va. 467, 478 (2023) (some alterations omitted) (quoting *Prease v. Clarke*, 302 Va. 376, 385 (2023)). Rather, "'[w]e can only administer the law as it is written.'" *Id*. (quoting *Coalter v. Bargamin*, 99 Va. 65, 71 (1901)).

Finally, the plaintiffs argue that we should defer to the Virginia Department of Labor and Industry's interpretation of the Act as found in a March 2022 Field Operations Manual. That manual, without elaboration, interprets Code § 40.1-29 as applying to commissions. "[W]e give deference to the decisions of administrative agencies when those decisions fall within an area of the agency's specialized competence." *Virginia Dep't of Health v. Kepa, Inc.*, 289 Va. 131, 139 (2015) (citations and quotation marks omitted). "However, when an issue involves a pure

10

question of statutory interpretation, that issue does not invoke the agency's specialized competence but is a question of law to be decided by the courts." *Id.* (citations and quotation marks omitted). This appeal presents a pure question of statutory construction that we review *de novo.* The language of Code § 40.1-29 includes "wages" and "salaries" but does not mention "commissions," despite the fact that the General Assembly has enacted other statutes that feature the term in conjunction with wages or salaries, or both. For all the reasons noted above, we are unpersuaded that a field manual from an administrative agency represents the correct interpretation of Code § 40.1-29.

To interpolate the word "commission" into the text of Code § 40.1-29 would require us "to add language to the statute that the General Assembly declined to employ." *Virginian-Pilot Media Cos., LLC v. Dow Jones & Co.*, 280 Va. 464, 469 (2010). We have "refused to engage in that enterprise" because "'[w]e must determine the legislative intent by what the statute says and not by what we think it should have said.'" *Id*. at 469 (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)). We therefore hold that Code § 40.1-29, which addresses wages and salaries, does not include commissions.

CONCLUSION

For the reasons noted above, we will reverse the judgment of the Court of Appeals.

*Reversed and final judgment.*

CHIEF JUSTICE GOODWYN, with whom JUSTICE MANN joins, dissenting.

Because I believe that the plain and ordinary meaning of the term "wages" includes commissions, I respectfully dissent. I would affirm the judgment of the Court of Appeals, *Campbell v. Groundworks Operations, LLC*, 82 Va. App. 580 (2024).

11

When a statute does not expressly define a term, we "infer the legislature's intent from the plain meaning of the language used." *Hubbard v. Henrico Ltd. P'ship*, 255 Va. 335, 340 (1998) (citations omitted). To determine the plain meaning, we refer to dictionaries. *See, e.g.*, *id.* (referring to Webster's Third New International Dictionary for the plain meaning of "invoke"); *see also Travelers Indem. Co. v. Portal Healthcare Solutions, LLC*, 35 F. Supp. 3d 765, 770 (E.D. Va. 2014) ("Virginia courts customarily turn to dictionaries for help in deciphering a term's plain meaning.") (collecting cases).

This case hinges on the plain meaning of the term "wages." A host of legal and nonlegal dictionaries have defined "wages" broadly since the late nineteenth century. *See* Black's Law Dictionary 1230 (1st ed. 1891) ("compensation agreed upon by a master to be paid to a servant, or any other person hired to do work or business for him"); 3 John Bouvier, Bouvier's Law Dictionary 3417 (8th ed. 1914) ("compensation given to a hired person for his or her services")[1] Black's Law Dictionary 1826 (3d ed. 1944) (compensation for services by those regardless of if they are "paid by the hour, the day, the week the month, the job, or the piece"); Black's Law Dictionary 1750 (4th ed. 1957) ("Every form of remuneration payable for a given period to an individual for personal services including salaries, [and] *commissions . . .*") (emphasis added); Webster's Third New International Dictionary 2568-69 (2002) ("a pledge or payment usu[ally] of monetary remuneration by an employer esp[ecially] for labor or services usually according to contract and on an hourly, daily, or piecework basis and often including bonuses, *commissions*, and [other amounts and benefits paid by employer]") (emphasis added); Black's Law Dictionary

---

[1] Bouvier's Law Dictionary also noted that commissions—at least in the context of the Bankruptcy Act—were "wages." 3 Bouvier' Law Dictionary at 3417 (citing *In re Dexter*, 158 F. 788 (1st Cir. 1907)).

1898 (12th ed. 2024) ("Payment for labor or services usually based on time worked or quantity produced; specific compensation of an employee based on time worked or output of production. [bullet point] Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, [and] *commissions*") (emphasis added).

We approved the term's broad definition in 1889 when we defined "wages" as "compensation given to a hired person for his or her services." *Fidelity Ins., Tr. & Safe-Deposit Co. v. Shenandoah Valley R.R. Co.*, 86 Va. 1, 8 (1889) (quoting the definition in 2 Bouvier's Law Dictionary 796 (1883)) (emphasis omitted).

Notably, we were not alone in our broad definition. Other states—in the absence of statutory definitions—have determined that the plain and ordinary meaning of the term "wages" is broad enough to include commissions.[2] *See Stowell v. Action Moving & Storage*, 933 A.2d 1128, 1132 (Vt. 2007) (holding the definition of "wages" included commissions).

A common thread runs through every definition of the term "wages:" wages are compensation for work done. In this case, the commissions that the appellant paid followed that common thread. Four of the five employees were paid exclusively by commission. In such instances, the commission payments are necessarily compensation because they are based on a particular employee's ability to secure sales and are the sole payment from the employer to the employee.[3] When an employee makes a sale, they are producing a type of output and are paid in accordance with that output—much like how a worker paid an hourly rate is only paid for the time they work, or how a worker paid by piecework is paid for the quantity they produce. That

---

[2] Commissions are "a fee paid to an agent or employee *for* transacting a piece of business or performing a service." Webster's Third New International Dictionary 457 (2002) (emphasis added).

[3] This may not always be the case. For example, if an employer paid commissions in addition to an hourly rate or salary, it might be a reward rather than compensation.

commissions are calculated from a percentage of the final sale price does not alter the payment's purpose: to compensate an employee based on work the employee has produced.

"The one canon of construction that precedes all others is that we presume that the legislature says what it means and means what it says." *Cornell v. Benedict*, 301 Va. 342, 349 (2022). In my view, when the legislature used the term "wages" in Code § 40.1-29, it understood the term as it has been used in dictionaries and by courts since the nineteenth century, and thus, the judgment of the Court of Appeals should be affirmed.

As the majority disagrees, I respectfully dissent.