## In re GUREWITZ.

(Circuit Court of Appeals, Second Circuit. April 9, 1903.)

### No. 168.

1. BANKRUPTCY—PRIORITY—WAGES—PIECE WORK.

Bankr. Act July 1, 1898, c. 541, § 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], provides that "wages" due workmen for service, earned within three months before commencement of proceedings in bankruptcy, shall be entitled to priority. Section 1, subd. 27, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3420], provides that "wage-earner" shall mean an individual who works for wages, salary, or hire at a compensation not exceeding $1,500 a year. Section 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], provides that any natural person, except a wage-earner or one engaged in farming, may be adjudged an involuntary bankrupt. *Held*, that the word "wage-earner" was defined in section 1 for the purposes of section 4b, and, such word not being found in section 64, the word "wages" in the latter section is to be construed as including a sum due one who worked by the piece.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York, in Bankruptcy.

On petition, filed by the trustee of the above-named bankrupt, to review an order of the District Court for the Southern District of New York, affirming a decision of the referee refusing to expunge the claim of Samuel Reitzen and holding that the said Reitzen is entitled to priority under section 64b (4) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), his claim being for wages earned within three months before the date of the bankruptcy proceedings. The trustee maintains that Reitzen is not enti'led to preference because he was paid by the piece, namely, at so much per garment, and that only those workmen are within the meaning of the act whose wages are measured and fixed by periods of time.

Emanuel Blumenstiel, for trustee.

L. E. Miller, for claimant.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The sole purpose of this review is to obtain an answer to the question whether or not so-called "piece-workers" are entitled to priority under section 64b (4) of the bankruptcy act. Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447].

During the three weeks prior to the filing of the petition Reitzen worked for the bankrupt at the latter's place of business as a pieceworker and earned the sum of $42.16 which he insists is entitled to priority. The amounts due this class of workmen, as well as those working by the week, had always been paid weekly by the bankrupt.

The section in controversy, so far as it relates to the present question, is as follows:

"Sec. 64. Debts which have priority. * * * Wages due to workmen, clerks, or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed three hundred dollars to each claimant." 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447].

The legislative intent in the foregoing provision is manifest. It is to give a preference, limited in time and amount, to those em-

ployés of the bankrupt who work for wages. It surely could not have been the purpose of Congress to make the method of computation a criterion of priority. There is absolutely nothing in the language quoted upon which to base such an assumption. In order to secure priority under this subdivision the creditor must establish the following facts: First, that he was a workman, clerk or servant of the bankrupt. Second, that he earned wages within three months prior to the commencement of the proceedings.

There is nothing ambiguous about the use of the word "wages" in this connection. It means the agreed compensation for services rendered by the workmen, clerks or servants of the bankrupt,—those who have served him in a subordinate or menial capacity and who are supposed to be dependent upon their earnings for their present support. Whether their employer has agreed to pay them by the hour, the day, the week, the month or by the "job" or piece, is wholly immaterial.

It is incredible to suppose that Congress intended to discriminate against the vast army of laborers who, in the coal mines, the foundries, the clothing manufactories and in almost every branch of industry, are paid not according to the time consumed but according to the work accomplished. An element of perplexity has been imported into the discussion by the assumption that the language quoted must be interpreted in the light of the definition of the word "wage-earner," found in section 1 of the act. Subdivision 27 provides that:

" 'Wage-earner' shall mean an individual who works for wages, salary, or hire, at a rate of compensation not exceeding one thousand five hundred dollars per year." 30 Stat. 544 [U. S. Comp. St. 1901, p. 3420].

It will be observed that the word "wage-earner" is not used in the subdivision now under consideration. The word used is "wages" and no technical definition of this word is found elsewhere in the act, probably because the lawmakers concluded that when a word so plain and simple was used no further explanation was necessary.

The reason for a concise definition of "wage-earner" is made apparent by an examination of section 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], which provides that "any natural person, except a wage-earner or person engaged chiefly in farming or the tillage of the soil, * * * may be adjudged an involuntary bankrupt." When a wage-earner was thus excepted from the operation of the involuntary features of the act it became necessary to define with precision the meaning of the term. We are, however, of the opinion that the definition has no application to the present controversy for the reason that the defined word is not found in section 64b (4), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447].

The order of the district court is affirmed, with costs.