216 F.2d 410
 UNITED MARINE DIVISION, I.L.A., LOCAL 333, A.F. OF L., an
Unincorporated Association, James P. McAllister, Edward
Morris, Lloyd Dalzell, William V. Bradley, Louis Ziegler and
Joseph O'Hare, Appellants,
v.
ESSEX TRANSPORTATION CO., a Corporation of The State of New
Jersey, Charles E. McCarren, Rita Keyasko and John
J. McCloskey.
 No. 11328.
 United States Court of Appeals Third Circuit.
 Argued Oct. 12, 1954.
Decided Nov. 3, 1954.
 
 Maurice Levinthal, Paterson, N.J., Roman Beck, New York City (Ward & Levinthal, Paterson, N.J., on the brief), for appellants.
 James A. Breslin, Lyndhurst, N.J., for appellee.
 Before MARIS, GOODRICH and KALODNER, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an appeal from a judgment for the defendant in a suit brought to compel the payment by the employer of money to a pension trust for employees.[1]
 
 
 2
 The plaintiff alleges that the defendant company orally agreed to make payments to six trustees of a welfare fund. The defendants say that this oral promise, if it was made, is insufficient to hold them liable for the payments because of a provision in the Labor Management Relations Act of 1947. 29 U.S.C.A. § 141 et seq. The district court was persuaded that this position was correct and ordered judgment for the defendants without submitting to the trier of the fact the question whether the promise to pay was made as alleged. We are, therefore, confronted at this point with a question of law solely and this question involves the interpretation of Section 186(c)(5)(B) of the statute referred to.
 
 
 3
 The two provisions to which we must give attention are as follows:
 
 
 4
 '(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.
 
 
 5
 '(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value.' 29 U.S.C.A. § 186(a) and (b).[2]
 
 
 6
 It is undisputed that at the time of the alleged oral agreement there was a welfare fund set up which was operated by six trustees, three of whom were chosen by the plaintiff union and three by the Marine Towing and Transportation Employers' Association. This fund was set up by an agreement in writing and the trustees had also established, through an agreement in writing, relations with a bank of deposit for custody of the funds and payment as specified in their agreement. But Essex Transportation Co. was not a member of this association and, therefore, not a party to any contract which the association made with the union.
 
 
 7
 We are faced with the question, therefore, whether an agreement such as the one alleged comes within the prohibition of the language quoted from Section 186. There is no doubt that the employees of Essex were employed in an industry affecting commerce. Our question becomes whether an agreement to pay money to these six trustees is a promise to pay to 'any representative of any of his employees.'
 
 
 8
 We approach the question with the thought in mind that these welfare funds represent a social device to be encouraged. See Upholsterers' International Union of North America v. Leathercraft Furniture Company, D.C.E.D.Pa.1949, 82 F.Supp. 570. We are also conscious of the fact that abuses in the use of these funds had been the subject of public discussion. It was thought that in some instances employers had been induced to agree to pay into welfare funds over which they had no control and, indeed, over which members of the union itself had no knowledge or control. This appears quite clearly in the discussion of this portion of the Taft-Hartley Act when the matter was before the Congress.
 
 
 9
 Thus, Senator Taft stated: '* * * the purpose of the provision is that the welfare fund shall be a perfectly definite fund, that its purposes shall be stated so that each employee can know what he is entitled to, can go to court and enforce his rights in the fund, and that it shall not be, therefore, in the sole discretion of the union or the union leaders and usable for any purpose which they may think is to the advantage of the union or the employee * * * The tendency is to demand a welfare fund as much in the power of the union as possible. Certainly unless we impose some restrictions we shall find that the welfare fund will become merely a war chest for the particular union * * *' 93 Cong.Rec. 4746-7 (1947).
 
 
 10
 Senator Byrd stated: '* * * I happen to have been a patron of a similar amendment to the Case bill last year which was adopted by a substantial majority. The reason that amendment was offered * * * was because Mr. John Lewis, the president of the United Mine Workers, was attempting to obtain a royalty of 10 cents a ton on all coal mined, the money thus obtained to be placed in a fund to be controlled exclusively by the labor union.' 93 Cong.Rec. 4678 (1947).
 
 
 11
 Senator Ball stated: '* * * the sole purpose of the amendment is not to prohibit welfare funds, but to make sure that they are legitimate trust funds, used actually for the specified benefits to the employees of the employers who contribute to them, and that they shall not degenerate into bribes.' 93 Cong.Rec. 4678 (1947). See also 93 Cong.Rec. 3562-66, 3634 (1947).
 
 
 12
 With this background it is not hard to see what the lawmakers were after. They were forbidding money to be paid to representatives of unions unless through a trust fund, the requirements for which were set up in some detail.[3]
 
 
 13
 We think that in this instance the promise of the employer (if indeed the promise was made)[4] was not a promise 'to any representatives of any of his employees.' The promise alleged was to pay these trustees. These trustees were not, in our judgment, representatives of the employees. They were trustees of a welfare fund. It is true that they were chosen half and half by the employers' association and this union. But we think that when set up as a board, as they were in this case, these individuals are not acting as representatives of either union or employers. They are trustees of a fund and have fiduciary duties in connection therewith as do any other trustees. The terms under which they act were carefully spelled out.
 
 
 14
 We think that the promise in this case is outside the evil which the Congress was endeavoring to erase in the sections of the statute which we have quoted. Since the fact situation is outside that evil, we do not think we should enlarge an application of the statute to void the type of arrangement which has met with legislative sanction, judicial approval and is a growing trend in employer-employee relations.
 
 
 15
 The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The suit is brought against both the corporation and the directors thereof, it being alleged that the corporation has been dissolved and its assets distributed to shareholders by the directors who are, it is alleged, liable under New Jersey law to creditors for the amount so distributed. See N.J.Stat.Anno. § 14:13-1 et seq. (1939)
 
 
 [2]
 We do not get much help from the definition which the Act gives of representatives and labor organizations. They read as follows: Section 152 of the Act, Definitions, subdivision (4) reads: 'The term 'representatives' includes any individual or labor organization.' 29 U.S.C.A. § 152(4). Subdivision (5) of the same section defines labor organization:
 'The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.' 29 U.S.C.A. § 152(5).
 
 
 [3]
 '(c) The provisions of this section shall not be applicable * * * or (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund * * * and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities.' 28 U.S.C.A. § 186(c)
 
 
 [4]
 The reason for this qualification is that in the agreed statement of fact submitted to this Court it was said that there was testimony to the effect that the promise was made but there was not any admission by the defendants that they accepted this testimony as true