In the Matter of Walter E. BRASSEL and Lillian I. Brassel, Individually and as co-partners, trading under the firm name of Brassels; and Walter E. Brassel, under firm name of Elgin Restaurant and Diner, Bankrupts.

No. 37103.

United States District Court
N. D. New York.
June 8, 1955.

Ernest E. DeRosa, Utica, for the Trustee.

Angelo N. Felice, Utica, for claimant.

BRENNAN, Chief Judge.

The sole question raised in this review involves the priority status in bankruptcy of a claim made against the bankrupt estates by the Trustees of a welfare fund.

The facts are not in dispute and are set forth in the decisions of the Referee of Oct. 1, 1954 and Mar. 29, 1955 and in his findings of Oct. 22, 1954 and Apr. 11, 1955. The two decisions and the two separate findings of the Referee are accounted for by the fact that the claim, as originally filed, embodied several items and on a previous review of the Referee's decision, this Court remanded the proceeding to the Referee for further action, especially as to the form of the claim and to receive any additional evidence that might be offered.

The underlying facts will be briefly referred to as a background for this decision.

On Jan. 22, 1954 the bankrupts filed a voluntary petition in bankruptcy in which they sought the relief afforded by the Act as to their individual and partnership liabilities. It is sufficient to say that they had been engaged in the conduct of two or more restaurants at the City of Utica, New York and for the purpose of the consideration of the claim, the liability of each of the bankrupt estates was not separately considered.

About October 1953 the bankrupts entered into collective bargaining agreements with Hotel and Restaurant Employees and Bartenders' Local No. 136 A.F. of L. of Utica, N. Y. which agreements were in effect on the date of the bankruptcy. Article IV, paragraph 6 is particularly pertinent to the present controversy and is quoted below:

"The Employer will contribute each and every week, commencing the first full week after the effective date of this agreement, 5% of the gross payroll for all employees covered by this agreement and transmit this sum to the Union Welfare Trust Fund no later than the 10th day of the following month, together with the names and Social Security numbers of the employees for whom the payments were made. These sums shall be held for insurance, medical and similar benefits, including reasonable administration charges, by the Trustees of the Trust Fund. Such Trustees shall be solely responsible for the administration of the Trust Fund. The Employer shall not be responsible in any way for the expenditure of this fund, nor shall any individual employee have any claim thereto, or to any part thereof. The discretion of the Trustees as to administration and use of the Trust Fund shall be final and conclusive".

It would appear without dispute that the bankrupts failed to make payment to the Union Welfare Trust Fund, as required in the above paragraph for the months of November and December 1953 and January 1954 in the total amount of $679.49.

An agreement and declaration of trust was received as an exhibit on the hearing before the Referee. Same bears the signature of the president, secretary-treasurer of Local No. 136 and of the three "trustees". Same in effect provides that the trustees shall collect and hold all contributions received from employers in accordance with the provisions of the bargaining agreement above quoted and all other similar agreements; that same shall be used to pay the expenses of administering the affairs of the trust and to provide and pay for premiums upon policies of accident, health and group life insurance or for direct payment of medical and hospitali-

zation expenses of members of the Union"—whether or not they are covered by collective bargaining agreements between certain employers and the Union—". It further provided that neither the employer nor the employee of an employer shall have any right, title or interest in or to any part of the trust estate except such rights which might accrue to him under an insurance policy or other welfare benefits. No employee shall have the option to receive any part of the contribution of the employer in lieu of the benefits provided by the trustees. Such rights are not assignable.

No question is raised as to the form or sufficiency of the claim, above referred to, which was signed individually by one of the trustees of the Union and Welfare Fund.

Claimant asserts that the debt of the bankrupts is entitled to priority in payment from the bankrupt estates by reason of the provisions of Section 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2). Such provision grants priority to (2) "wages not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis".

The Trustee disputes the priority status of the claim contending that the amounts claimed are not "wages" as the term is used in the section above quoted.

The parties agree that they are unable to find a reported case which would serve as a precedent for the problem involved. Cases involving the consideration of provisions for vacation and severance pay are not helpful since such items generally are considered under a contract which makes provision for same as the result of the actual services performed by the employee and are payable direct to him. This is not the situation here. Neither are the cases involving the requirement of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. to bargain collectively of controlling importance here.

The problem must be met and decided in accordance with the intent and language of Section 64, sub. a(2) of the Bankruptcy Act.

The history of the section indicates clearly that the intention thereof was to give a special protection in a limited amount to workmen who by reason of the amount of their remuneration would ordinarily be expected to depend upon their daily, weekly or monthly wage for their support and the support of their families. Collier on Bankruptcy, 14th Ed., Vol. 3, Par. 64.201; In re Paradise Catering Corporation, D.C., 36 F.Supp. 974.

Turning now to the language of the section, it seems clear that same has a direct reference to the individual workman. The "wages" must be "due" to workmen and "each claimant" is limited in his claim to $600 earned within three months of the bankruptcy of his employer. The language of the section contemplates a claim by a workman or his assignee for earnings which are due to him personally and for which the employer is liable to him.

The Court has no quarrel with the contention that the term "wages", as used in the section, is to be construed liberally but is impelled to hold with the Referee that the contribution here is not "wages", as the term is used in Section 64, sub. a(2) of the Act. All of the facts point to the decision. The bargaining contract indicates a definite intention to exclude the employers' contribution from a category which would require the payment of income tax upon such contribution. It is argued that the contribution is not subject to income or withholding taxes but, at the same time, it is asserted that it is wages as to each individual employee. If the argument be accepted, the claimant is in no position to assert that the contribution is wages as to it. No assignment is claimed. The contribution was never held in trust by the employer. The claimant here is in the position of a creditor secured only by the bankrupts' promise to pay. McKey v. Paradise, 299 U.S. 119, 57 S.Ct. 124, 81 L.Ed. 75.

The contribution of the bankrupts has no relation to the wages of the employee except that the employee's individual weekly earnings play a part in the formula by which the amount of the employers' contribution is determined. Any other yardstick could be used. It is evident here that the purpose of the provision in the bargaining agreement was to afford a measure of benefit to union members and members of their families rather than to the bankrupts' employees. Such benefits cease upon a lapse in union membership so that the ultimate benefit to the individual workman is dependent upon such union membership rather than upon his employment or by the contribution made by his employer. Even the insurance certificates received in evidence as samples of the benefits procured by the fund, from the proceeds of the employers' contribution, refer to the insured as the employee of the union and the benefits cease when he is dismissed from such employment. The conclusion seems to be inescapable that even adopting the most liberal construction of the term "wages" that same cannot be applied here since union membership, rather than employee relationship, is the requirement for any possible benefit.

If contributions to a fund by an employer are to be construed as "wages" and as covered by the provisions of Section 64, sub. a(2) of the Act, its purpose of protection would be greatly weakened by present day conditions. A contribution of even a small percentage of the gross weekly payroll of a great number of employers would exceed the amount of $600 even in a single week.

The ultimate contention here however is one of priority. Liberality of construction of the term "wages" does not justify a nullification of the language of the statute which grants priority only to "wages * * * due to workmen". The employers' contribution here is never due to the employee. He may not enforce the employers' liability therefor. The employee never had an individual or assignable proprietory interest in the contribution or to the fund of which the contribution became a part. The discretion of the trustees in the administration of the fund is final and conclusive. The contributions here may be entirely exhausted by the expense of administration or by benefits allotted to union members possessing union seniority who never have been employed by a contributing employer. Here there is no claim of an assignment by the employees. It was not the intention of the section to afford priority protection to entire strangers. The claim is not entitled to priority.

It is the conclusion of the Court, for the reasons above stated, that the claim of priority under the provisions of Section 64, sub. a(2) of the Bankruptcy Act, made by the claimant here, should be denied. The findings and conclusions of the Referee are affirmed and the claim is allowed as an unsecured claim in the amount as filed. It is so ordered.