**Matter of Henry B. OTTO, doing business as Bud Otto's Steak House, Bankrupt.**

**No. 62769.**

United States District Court
S. D. California, Central Division.
Nov. 21, 1956.

Denison, Dietrich & Anderson and James H. Denison, Los Angeles, Cal., for petitioners for review.

Craig, Weller & Laugharn and William E. Bartley, Los Angeles, Cal., for trustee in bankruptcy.

MATHES, District Judge.

This proceeding is here upon the petition of the trustees of Los Angeles Hotel-Restaurant Employer-Union Welfare Fund for review of the Referee's order of June 29, 1956, denying wage priority under § 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2), to claims for unpaid contributions due from the bankrupt-employer to the Welfare Fund pursuant to a collective bargaining agreement.

There is no dispute as to the facts. At the time of filing of the voluntary petition in bankruptcy, there was in force a collective bargaining agreement between the bankrupt and the Los Angeles Local Joint Executive Board of Culinary Workers and Bartenders Unions which provided *inter alia:*

> *"Wage Scale, 'Schedule A' Attached To This Agreement*
>
> "(9) Employer shall pay to persons employed * * * no less than the wage scales provided in 'Schedule A' attached hereto which is by this reference incorporated herein. * * *
>
> "Schedule 'A'
>
> "Health And Welfare Fund
>
> "For each hour worked or paid for * * * the Employer shall pay 5 cents [later 6 cents] per hour into * * * Welfare Fund as established by the Restaurant-Hotel Employers' Council and the * * * [unions], such payment shall be made * * * each month * * * for the previous month. The payments shall be made to * * * Welfare Fund * * *. Each monthly payment shall be accompanied by a list of employees and the hours worked by each employee per calendar month. * * *
>
> *"Acceptance*
>
> "(14) The undersigned [the employer] hereby acknowledges the receipt of a Trust Agreement * * * and the undersigned agrees to accept, be bound by and comply fully with all of the terms thereof, pursuant to the agreement between the undersigned and the * * * [unions]."

The "Trust Agreement" referred to is denominated "Agreement and Declara-

tion of Trust providing for Los Angeles Hotel-Restaurant Employer-Union Welfare Fund."

Established in 1952 by the Restaurant-Hotel Employers' Council of Southern California, Inc. and the Los Angeles Joint Executive Board of Culinary Workers, Bartenders and Hotel Service Workers, the object of the Welfare Fund is to provide medical, hospital, and surgical benefits and life insurance for employees and their dependents.

Employer contributions to this Welfare Fund come from setting aside for such purpose specified portions (originally five cents and later six cents per hour) of cost-of-living wage increases obtained after collective bargaining following annual wage reopenings.

An employee and his dependents become eligible for possible benefits payable from the Welfare Fund, whenever the employee has worked and continues to work a requisite number of months and hours per month for employers who contribute to the fund, if he is a member of one of the unions covered, or is registered with one of the unions to work in wage classifications under an applicable collective bargaining agreement.

Additionally, employees of the unions, the Council, and the Welfare Fund, owners, partners and corporate officers actively engaged in the business of the employers, as well as other executive employees of the employers, may become eligible for benefits under the Welfare Fund upon approval of the trustees of the fund and payment of the required contributions.

Section 5.05 of the Trust Agreement provides that "neither the parties hereto nor * * * any employee or other beneficiary under this trust, nor any person * * * other than the Trustees, shall have any right, title or interest in such monies or property of the Fund, or in any part of the trust estate, except the right to receive the benefits provided under this Trust Agreement."

■ The Referee denied priority to contributions due the Welfare Fund and remaining unpaid from the employer-bankrupt at the time of the filing of the petition at bar. Whether claims for such defaulted contributions should have priority over claims of general creditors is, as Mr. Justice Douglas said in Nathanson v. N. L. R. B., "a question to be answered from the Bankruptcy Act." 1952, 344 U.S. 25, 28–29, 73 S.Ct. 80, 83, 97 L. Ed. 23.

Section 64, sub. a, of the Act provides that: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, * * * shall be * * * (2) wages not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen * * *." 11 U.S.C.A. § 104, sub. a.

Admittedly, contributions due the Welfare Fund from the bankrupt-employer in this proceeding do "not * * * exceed $600 to each claimant", by reason of the hours worked by any single employee; and "have been earned within three months before the date of the commencement of the proceeding." It is also beyond dispute that the employees, whose hours worked determined the amount of the unpaid contributions for which wage priority is claimed, were "workmen" within the meaning of § 64, sub. a(2).

So the only question remaining is whether these unpaid contributions from the bankrupt-employer to the Welfare Fund under the collective bargaining agreement are "wages" which are "due to workmen" within the meaning of § 64, sub. a(2).

■ Inasmuch as "federal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors", the answer to this question is ruled by federal law. American Surety Co. of New York v. Sampsell, 1946, 327 U.S. 269, 272, 66 S.Ct. 571, 573, 90 L.Ed. 663. All the more appropriately so here, because the answer turns upon interpretation and application of § 64, sub. a(2), of the Act, and "in the interpretation and application of federal stat-

utes, federal not local law applies." Prudence Realization Corp. v. Geist, 1942, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293; Deitrick v. Greaney, 1940, 309 U.S. 190, 200–201, 60 S.Ct. 480, 84 L.Ed. 694.

Turning first to a consideration of the content of the term "wages" as used in § 64, sub. a(2), it is noted that "no technical definition of this word is found * * * in the act, probably because the lawmakers concluded that when a word so plain and simple was used no further explanation was necessary." In re Gurewitz, 2 Cir., 1903, 121 F. 982, at page 983. Moreover, the plain and simple meaning of wages is "the agreed compensation for services rendered." Id., 121 F. at page 983; In re New England Thread Co., 1 Cir., 1907, 158 F. 788, 792.

As new methods of computing and paying compensation for services rendered have come into use in commerce and industry over the years, the content of "wages" in § 64, sub. a(2) has likewise expanded. Today, "wages" are held to include: back pay, Nathanson v. N. L. R. B., supra, 344 U.S. at page 29, 73 S.Ct. at page 83, 97 L.Ed. 23; vacation pay, Division of Labor Law Enforcement, State of California v. Sampsell, 9 Cir., 1949, 172 F.2d 400; severance pay, McCloskey v. Division of Labor Law Enforcement, 9 Cir., 1952, 200 F.2d 402; and disability insurance premiums deducted by the employer and paid to an insurance company, In re Ross, D.C.N.D. Cal.1953, 117 F.Supp. 346.

An employer's contributions to a welfare fund for the benefit of employees and others, payable in performance of an obligation of the employer under a collective bargaining agreement, and measured on the basis of a certain amount per hour worked by employees, is but another method of computing and paying compensation for services rendered; and accordingly should be held to be "wages" within the meaning of § 64, sub. a(2) of the Bankruptcy Act. Cf. McKey v. Paradise, 1936, 299 U.S. 119, 57 S.Ct. 124, 81 L.Ed. 75; In re Public Ledger, Inc., 3 Cir., 1947, 161 F.2d 762, 767.

The interpretation that contributions by an employer under a collective bargaining agreement to a welfare fund are "wages" within the meaning of § 64, sub. a(2) is in effect buttressed by the specific exception of such contributions from the definition of "wages" in other federal statutes. See Revenue Act of 1954, 26 U.S.C. § 106; Federal Insurance Contributions Act, 26 U.S.C. § 3121(a)(2); Federal Unemployment Tax Act, 26 U.S.C. § 3306(b)(2); Social Security Act, 42 U.S.C.A. § 409(b).

For as Mr. Chief Justice Marshall pointed out in Brown v. Maryland, "a rule of interpretation to which all assent, [is] that the exception of a particular thing from general words, proves that, in the opinion of the lawgiver, the thing excepted would be within the general clauses, had the exception not been made." 1827, 12 Wheat. 419, 438, 25 U. S. 419, 438, 6 L.Ed. 678.

Persuasive too is the circumstance that, in the absence of specific exception, employers' health and welfare contributions have been held to constitute wages within the meaning of: the Labor Relations Act, as amended by the Labor Management Relations Act of 1947, 29 U.S.C.A. § 151 et seq., Inland Steel Co. v. N. L. R. B., 7 Cir., 1948, 170 F.2d 247, 251, 12 A.L.R.2d 240, certiorari denied, 1949, 336 U.S. 960, 69 S.Ct. 887, 93 L. Ed. 1112; the Social Security Act, MacPherson v. Ewing, D.C.N.D.Cal.1952, 107 F.Supp. 666; and the Federal Employment Tax Act, 26 U.S.C.A. (I.R.C.1939) § 1426, City of Avalon, 9 Cir., 1946, 156 F.2d 500.

The fact that no income tax was withheld by the employer on the amount of such "wages" is irrelevant to the problem of interpretation here, since as already noted § 106 of the Revenue Act of 1954 expressly excludes from gross income "contributions by the employer to accident or health plans for compensation (through insurance or otherwise) to his employees for personal injuries or sick-

ness." 26 U.S.C. § 106; cf. In re Brassel, D.C.N.D.N.Y.1955, 135 F.Supp. 827, 829.

■■ Although the wage priority is intended for those "who are * * * presumed to be dependent upon their earnings for their present support", In re New England Thread Co., supra, 158 F. at page 792, the Act does not confer upon a bankruptcy court the power to differentiate between compensation to be used for different purposes, cf. In re Schenectady Ry. Co., D.C.N.D.N.Y.1950, 93 F.Supp. 67, 70. Consequently, notions as to how an employee should spend his compensation cannot properly influence determination of the problem under discussion.

So the fact that here the employees in effect used a portion of their compensation to purchase contingent or deferred insurance benefits is not relevant. See In re Ross, supra, 117 F.Supp. 346; cf. In re Sleep Products, Inc., D.C.S.D.N.Y. 1956, 141 F.Supp. 463; In re Brassel, supra, 135 F.Supp. 827.

For like reason, the circumstance that the employees chose to include dependents within the coverage of their insurance, and chose to pool their respective employers' contributions, is irrelevant to this inquiry into the wage status of the employers' contributions. Ibid.

■ The conclusion is then that the employer's contributions in question constituted a part of the employee's compensation, "in effect additional wages", In re Wil-Low Cafeterias, Inc., 2 Cir., 1940, 111 F.2d 429, 432, since "it surely could not have been the purpose of Congress to make the method of computation a criterion of priority". In re Gurewitz, supra, 121 F. at page 983.

■ Still to be considered is the problem whether the contributions now held to be "wages" were "due to" the employees within the meaning of § 64, sub. a(2), bearing in mind that the verb "due" is there used "in the sense of owing * * *." Kavanas v. Mead, 4 Cir., 1948, 171 F.2d 195, 198, 6 A.L.R.2d 645.

The precise inquiry on this phase of the question is whether the employees legally could and did assign a portion of their "wages" and, if so, whether any such assigned wages thereby lost priority status.

■ While the validity of an assignment of a wage claim is governed by state law, Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, whatever priority is to be accorded a wage claim in the hands of an assignee is governed by federal bankruptcy law, American Surety Co. of New York v. Sampsell, supra, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663.

■ Looking to the state law which rules the validity and effectiveness of any partial assignment here, the wages in question were subject to assignment under the law of California, because they were to be earned under an existing employment or an existing or contemplated contract of employment. Cal.Civ.Code, §§ 1044, 1045; H. D. Roosen Co. v. Pacific Radio Pub. Co., 1932, 123 Cal.App. 525, 11 P.2d 873, 875; Walker v. Rich, 1926, 79 Cal.App. 139, 249 P. 56, 58; accord, In re Ross, supra, 117 F.Supp. 346.

And § 300 of the California Labor Code provides that the formal "conditions of validity" generally applicable to assignments of wages "shall not apply to deductions which the employer may be requested by the employee to make for * * * contribution to funds * * * providing for death, * * * disability, * * * or other benefits * * *."

■ Undeniably the union, as collective bargaining representative of the employees, had authority to bind the employees to the Trust Agreement establishing the Welfare Fund and to the collective bargaining agreement providing for employer contributions to the Welfare Fund. Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048; Potlatch Forests, Inc. v. International Woodworkers, D.C.D.Idaho 1951, 108 F.Supp. 906, affirmed Olsen v. Potlatch Forests, Inc., 9 Cir., 1953, 200

F.2d 700; W. W. Cross & Co. v. N. L. R. B., 1 Cir., 1949, 174 F.2d 875, 877–878; Inland Steel Co. v. N. L. R. B., supra, 170 F.2d 247.

It must be held therefore that the union, as the bargaining representative of its members, here made a valid assignment to the Welfare Fund of a portion of its members' wages to be earned in the future. Moreover, since the employer is obligated by the provisions of the collective bargaining agreement to pay the assigned wages to the Welfare Fund, the assignment is enforceable at law, rather than only in equity, by the trustees of the Welfare Fund. McIntyre v. Hauser, 1900, 131 Cal. 11, 63 P. 69.

Finally, it has long been settled that an assigned wage claim, whether assigned before or after commencement of bankruptcy proceedings, retains in the hands of the assignee the same wage priority character that it possessed when owned by the assignor-workman. Shropshire, Woodliff & Co. v. Bush, 1907, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436.

As Mr. Justice Moody said for the Court in Shropshire, Woodliff & Co. v. Bush, supra, the Act "nowhere expressly or by fair implication says that the wages must be due to the earner at the time of the presentment of the claim, or of the beginning of the proceedings, and we find no warrant for supplying such a restriction. Regarding, then, the plain words of the statute, and no more, they seem to be merely descriptive of the nature of the debt to which priority is given. When one has incurred a debt for wages due to workmen, * * * that debt, within the limits of time and amount prescribed by the act, is entitled to priority of payment. The priority is attached to the debt, and not to the person of the creditor; to the claim, and not to the claimant." 204 U.S. at page 189, 27 S.Ct. at page 178.

Where as here wages to become "due to workmen" in the future are assignable under applicable state law, there appears no reason why the assignee of such future wages, which have since become due, should not be accorded the same priority in bankruptcy as the assignee of wages already due at the time of the assignment. See In re Ross, supra, 117 F.Supp. 346.

The conclusion follows that the wage claims in question, covering wages to be earned in the future, were effectively assigned under California law by the employees' representative to the Welfare Fund and, under federal bankruptcy law, fall within the priority granted to wage claims in § 64, sub. a(2) of the Bankruptcy Act.

This conclusion is in accord with the purpose, as well as the letter, of § 64, sub. a(2). Cf. United Marine Division, I.L.A., Local 333, A.F. of L. v. Essex Transportation Co., 3 Cir., 1954, 216 F.2d 410, 411. For by according a preference to these claims as wages, those who have "lost their employment by the bankruptcy, [and are] * * * in need of such protection", Blessing v. Blanchard, 9 Cir., 1915, 223 F. 35, 37, receive that protection in the form of a preference in bankruptcy for medical, hospital, surgical, and life insurance premiums, rather than cash. Cf. In re Sleep Products, Inc., supra, 141 F.Supp. 463; In re Brassel, supra, 135 F.Supp. 827.

For the reasons stated, the order of the Referee denying wage priority under § 64, sub. a(2) of the Bankruptcy Act to the claims under review must be reversed.