**LOCAL 140 SECURITY FUND**
Claimant-Appellant,

v.

**William S. HACK, Trustee in Bankruptcy of Sleep Products, Inc., Respondent-Appellee.**

No. 77, Docket 24113.

United States Court of Appeals
Second Circuit.

Argued Jan. 14, 1957.

Decided March 4, 1957.

Rabinowitz & Boudin, Victor Rabinowitz, New York City, for claimant-appellant.

Meyer Lindenbaum, New York City (Booth, Lipton & Lipton, Edgar A. Booth and Leonard A. Sheft, New York City, of counsel), for respondent-appellee.

Peter Campbell Brown, Corp. Counsel, New York City (Stanley Buchsbaum, Bernard H. Sherris and John J. Lyden, New York City, of counsel), for claimant, City of New York.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (William Stackpole, New York City, of counsel), amicus curiae.

Before MEDINA and HINCKS, Circuit Judges, and LEIBELL, District Judge.

LEIBELL, District Judge.

In the above entitled bankruptcy proceeding Local 140 Security Fund filed a claim for $2,400. It further asserted that the claim was entitled to *priority* as a claim for "wages" pursuant to Section 64, sub. a(2) of the Bankruptcy Act.[1] A petition to expunge the Fund's claim was filed with the Referee by the trustee of the bankrupt. Prior to a hearing on the petition, a stipulation of facts was entered into and the amount of the claim was reduced to $993.75. The claimant's right to priority for the reduced amount, as a claim for "wages," was contested before the Referee. He sustained the trustee's contention that the claim was not a wage claim and was not entitled to priority. He allowed the claim only as a general claim.

On a petition to review the Referee's determination, the District Court sustained the Referee's ruling and entered an order accordingly. The issue is now before this Court on an appeal by the Fund from the District Court's order. The City of New York, a tax claimant,

1. "§ 64. Debts which have priority.
"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (2) wages not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; * * *." T. 11 U.S. C.A. § 104, sub. a(2).

joins with the trustee in opposing the Fund's claim to priority. So does the Government, also a tax claimant.

A form of collective bargaining agreement between Local 140 and Sleep Products, Inc. (Ex. C annexed to the Stipulation of Fact) contained the usual provisions in relation to the hiring of employees, hours of employment, rates of compensation, days to be defined as legal holidays, vacation pay, and the deduction from the wages of the employee of an appropriate amount for "dues" payable to the Union.

Paragraph Thirty-second of the agreement contained provisions for payments to be made by the employer to Local 104 Security Fund and reads as follows:

"Thirty-second: The Employer hereby agrees, as long as this agreement remains in effect, to pay monthly on or before the tenth day of each month, a sum equal to 6% of the monthly gross payroll of the employees in the bargaining unit, to Local 140 Security Fund, for the purpose of financing a Security Plan for the benefit of the employees of the Employer within the bargaining unit. At the same time the Employer shall forward a report setting forth the figures upon which payment is based.

"Commencing February. 15th, 1953, the Employer agrees to pay an additional one-half (½%) per cent to the Local 140 Security Fund, the sum to be applicable to the Welfare provisions of the Security Fund, making it a total of six and one-half (6½%) per cent.

"The employer further agrees to make the aforesaid monthly remittances to the Local 140 Security Fund at its offices and that each monthly payment shall be based upon the gross payroll of the employees in the bargaining unit for the preceding month.

"It is understood that the social benefits to be provided will meet the requirements of all applicable laws and will satisfy the Employer's obligations under the New York State Disability Law, without further obligation on the part of the Employer.[2]

"It is agreed that Local 140 Security Fund will be administered in compliance with the provisions of all applicable laws."

The Referee, in expunging the claim as a priority claim, based his decision on Judge Brennan's ruling in a similar case, Matter of Brassel, D.C.N.D.N.Y., 135 F.Supp. 827.

In the Brassel case Judge Brennan held that a creditor, a union welfare trust fund, making a claim against Brassel's estate based on his failure as an employer to pay to the union's welfare fund 5% of the gross payroll of all employees covered by a collective bargaining agreement, was not entitled to priority on its claim as a wage claim.

In affirming Referee Lowenthal's order in the case at bar Judge Herlands wrote a well-considered opinion, D.C., 141 F. Supp. 463, and concluded that any enlargement of the term "wages" in Section 64, sub. a(2) of the Bankruptcy Act, so as to include payments made by an employer to a Welfare Fund under a collective bargaining agreement, should be left to Congressional action through an amendment to the Act. To support that view he cites what the New York State Legislature did in 1952, in amending Section 22 of the Debtor and Creditor Law, McKinney's Consol.Laws, c. 12 to include in the definition of "wages or salaries" the contributions of employers to insurance or welfare benefits, and to pension and annuity funds. Claims of Welfare Funds for unpaid sums due

---

2. The New York Disability Benefits Law which is part of the Workmen's Compensation Law, McKinney's Consol.Laws, c. 67, §§ 200 to 242, by § 211(5) thereof recognizes an agreement such as the present one, as a compliance with the employer's obligations under that statute.

from the employer are granted a preference in the administration of the estate of an employer who make a General Assignment for the benefit of his creditors under the New York statute.

Prior to the July 1952 amendment of Section 22 of the New York Debtor and Creditor Law, judges of the State Supreme Court had rendered conflicting opinions on the right of a Welfare Fund to a preference similar to the preference given wage claims in a proceeding under a General Assignment.[3] In the Federal Court we now have conflicting opinions in the District Courts on the right of Welfare Funds to a wage claim priority against a bankrupt employer.[4]

Judge Brennan's opinion in the Brassel case has been the subject of commentary notes in two Law Reviews. The Georgia Bar Journal of August 1956 (Vol. XIX, Number 1) pp. 107–108, disagreed with Judge Brennan's opinion. The article stated that the opinion seemed to minimize the idea of partial benefit to the employee (who would cease to derive any benefit upon a lapse in union membership) and to disregard the connection between the payments to the fund and the work done.

The article in the Chicago-Kent Law Review, Vol. XXXIV (1955–1956) pp. 235–239 agreed with Judge Brennan's disposition of the Brassel case and stated:

"The conclusion reached in the instant case, therefore, seems to be an inescapable one even under the most liberal construction of all of the terms of the relevant portions of the statute for the claimant was not a workman, or an assignee of a workman; the sum claimed did not represent wages in the ordinary sense of the term; and the amount payable while measured by the amount of wages earned, formed no more than a contractual obligation owed to a third person. * * * If the fringe benefits now common under modern mass employment contracts are to be protected against the impact of bankruptcy, substantial revision would have to be made both in the statutory language and in the fundamental concepts concerning priorities."

Judge Herlands' opinion in the case at bar has been discussed in a rather extensive note in 66 Yale Law Journal, No. 3, pp. 449 to 461. The author states that "from the standpoint of legislative intent, however, the Sleep opinion may appear to be on solid ground." * * * "The courts, however, should ascribe a broader purpose to the wage priority."

To follow that suggestion would lead to as many different judicial opinions as there are different forms of collective bargaining agreements containing provisions for payments to Welfare Funds. Some contain an assignment of a portion of the workmen's wages as a payment to the Welfare Fund. In re Ross, D.C., 117 F.Supp. 346. There is a sound basis for a claim of priority by the assignee, the Welfare Fund, in such a case,[5] although the determination of the amount of its claim, if the employees also have filed claims for unpaid wages, may present some difficulty. Other collective bargaining agreements, such as in the case at bar, provide only for a payment by the employer to the Welfare Fund, with no assignment or deduction from the workmen's wages. An intermediate class, contains a combination of payments by the workman and by the employer to the Fund.

The claim in its origin must be one for wages due to a workman, to be entitled to priority under Sec. 64, sub. a(2). If it is,

---

3. See In re Well Bilt Box Spring Corp., 1949, 196 Misc. 848, 89 N.Y.S.2d 768.

4. The Brassel case in the Northern District of New York (Judge Brennan's opinion); the In re Otto case in the Southern District of California, 146 F. Supp. 786 (Judge Mathes' opinion); and

Judge Herlands' opinion in the present case. In addition there are conflicting opinions of Referees in Bankruptcy.

5. Shropshire, Woodliff & Co. v. Bush, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436; In re Stultz Bros., D.C., 226 F. 989.

the right of priority carries over to the workman's assignee. If the claim was never a part of his wages and was never a sum due to him, it would not be entitled to priority; and no theory of an indirect conditional benefit to him can give it priority. "The priority is attached to the debt, and not to the person of the creditor; to the claim, and not to the claimant." [6]

In Nathanson v. National Labor Relations Board, 344 U.S. 26, 73 S.Ct. 80, 97 L.Ed. 23, Mr. Justice Douglas, writing the majority opinion, denied claims of the Board for back pay awards made under Section 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c), to fifth class priority as a claim of the United States under Section 64, sub. a(5) of the Bankruptcy Act. The claims were genuine claims for wages but they could not meet the priority requirement of having accrued within three months of the employer's bankruptcy under Section 64, sub. a(2). The opinion stated, 344 U.S. at pages 28–29, 73 S.Ct. at page 82:

"The Board argues that the interest of the United States in eradicating unfair labor practices is so great that the back pay order should be given the additional sanction of priority in payment. Whether that should be done is a legislative decision. The contest now is no longer between employees and management but between various classes of creditors. The policy of the National Labor Relations Act is fully served by recognizing the claim for back pay as one to be paid from the estate. The question whether it should be paid in preference to other creditors is a question to be answered from the Bankruptcy Act. When Congress came to claims for unpaid wages it did not grant all of them priority. It limited the priority to $600 for each claimant and even then only allowed it as respects wages earned within three months before the date of the commencement of the proceed-

ings. § 64, sub. a(2). We would depart from that policy if we granted the priority to one class of wage claimants irrespective of the amount of the claim or the time of its accrual. The theme of the Bankruptcy Act is 'equality of distribution', Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293; and if one claimant is to be preferred over others, the purpose should be clear from the statute. We can find in the Bankruptcy Act no warrant for giving these back pay awards any different treatment than other wage claims enjoy."

What were specified in the collective bargaining agreement, Exhibit C, as payments by the employer to Local 140 Security Fund under paragraphs Thirty-second and Thirty-third, created only a debtor and creditor obligation between the employer and third parties, for something other than wages. The language of the statute granting priority to wages cannot be stretched so as to embrace this type of claim. If every type of payment made by an employer to a union welfare fund is to be given priority as a claim for "wages" under Section 64, sub. a(2) of the Bankruptcy Act, that should be done through the legislative action of the Congress, and not by any judicial mislabeling of such payments as "wages."

The order of the District Court is affirmed.

HINCKS, Circuit Judge (concurring).

I concur in all respects with Judge Leibell's opinion. I add these few words only to make it plain that in my opinion the indicated result is required not only because the debts for which the statutory priority is claimed are not "wages" but also because they are not "due to workmen, servants, clerks, * * *." To me it seems self-evident that the appellant-Fund is not a *workman*. Nor have any of the "workmen" assigned their claims

6. Shropshire, Woodliff & Co. v. Bush, 204 U.S. 186, 27 S.Ct. 178, 179, 51 L.Ed. 436; In re Stultz Bros., D.C., 226 F. 989.

to the appellant. It appears to me wholly inadmissible to say that the appellant is an "equitable assignee" of "workmen" when, as the appellant truly says in its brief, no employee "has any right, title or interest in the trust fund, except the right to insurance coverage and welfare benefits"; and "No employee has an option to receive any part of the employer's contribution in lieu of insurance benefits."