

Raff, Sherman & Scheider, Newark, N. J., for trustee, by Louis Sherman, Newark, N. J.

Chester A. Weidenburner, United States Atty., Newark, N. J., for United States, by Jerome D. Schweitzer, Asst. United States Atty., Newark, N. J.

Sidney Reitman, Newark, N. J., for claimant, Jacob Sheinkman, and Henry Mittler, New York City, of counsel.

In the Matter of VICTORY APPAREL MANUFACTURING CORPORATION, Bankrupt.

No. 506–55.

United States District Court
D. New Jersey.

July 17, 1957.

MODARELLI, District Judge.

There is a petition before the court to review an order of the Referee in Bankruptcy regarding the disallowance of certain claimed wage priorities. On May 1, 1957, Referee William H. Tallyn granted a motion of the Trustee to expunge and disallow the claim of Local 126 of the Amalgamated Clothing Workers of America for contributions to the Amalgamated Cotton Garment and Allied Industries Insurance and Retirement Funds as a priority claim for wages within the meaning of § 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2). The Trustee and the United States of America, the latter as a creditor of the bankrupt, appeared in support of the Referee's order.

Upon the filing of a petition in bankruptcy by the Victory Apparel Corporation, the appellant-claimant, Local 126

of the Amalgamated Clothing Workers of America, hereinafter referred to as "Local 126," filed a proof of claim amended to the amount of $1,695.84. This sum represents alleged wage priorities due for a 90-day period prior to the filing of the petition. The claim is predicated upon a collective bargaining agreement dated January 3, 1955, signed by the employer-bankrupt and Local 126. Pursuant to this agreement, the employer was required to make payments computed at four and one-half per cent of the gross reportable payroll of the employees in the bargaining unit. These payments were made directly to the Insurance and Welfare Funds. For the three-month period immediately preceding the filing of the bankruptcy petition, the employer failed to pay $1,695.84 to the funds; this is the amount of the claim, as noted above. The fundamental question disposed of by the Referee and now before this court is whether employer contributions to union health and welfare funds, made pursuant to a collective bargaining agreement, are entitled to priority in payment as "wages" pursuant to § 64, sub. a(2) of the Bankruptcy Act.

Perhaps it would be instructive to recite the statutory language which comprises the prerequisites to a valid priority.

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; * * * ." Section 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2).

As noted by the recognized authority in the field of bankruptcy, "wages" for which a prior claim may be made under the statute "are closely circumscribed by express provisions of the Act," and each one of the statutory "qualifications must be satisfied before priority entails." Collier on Bankruptcy (14th ed. 1941), p. 2083.

To determine whether the claim in this case satisfies the statutory definition, it is necessary to analyze the agreement negotiated by the employer and Local 126. The collective bargaining agreements, with supplements, were introduced in evidence at the hearing before the Referee and are before this court.[1] These agreements contain the usual provisions in relation to the hiring of employees, hours of employment, rates of compensation, days to be defined as legal holidays, and vacation pay. Article IX makes reference to and incorporates the supplemental agreements dealing with the insurance and retirement funds. Paragraph Three of the supplement agreement relating to the Cotton Garment Retirement Fund reads as follows:

"3. Commencing on the pay day for the week of January 3, 1955, and weekly thereafter, the Employer shall pay to the Trustees (hereinafter called the 'Trustees') designated under an Agreement and Declaration of Trust dated as of May 1, 1950 and as amended as of March 27, 1953, a copy of which Agreement Declaration of Trust has been exhibited to and approved by the Employer and is herein specifically incorporated by reference, sums of money determined as follows:

Two (2%) per cent of the wages payable for the preceding pay period to all the Employees."

The supplemental agreement designated Cotton Garment Insurance Fund contains the same language except that the contribution is calculated as follows:

"Two (2%) of the wages payable for the preceding pay period to all Employees, and commencing on the pay day for the week of January 1,

---

1. Union Exhibits 6, 7, 8, and 9.

1954, and weekly thereafter, the aforesaid percentage of payroll shall be increased to three (3%) per cent."

Paragraph Five of the agreements contains the following language:

"5. No Employee or member of his family shall have the option to receive instead of the benefits provided for by the Agreement and Declaration of Trust any part of the contribution of the Employer. No Employee or member of his family shall have the right to assign any benefits to which he may be or become entitled under the Agreement and Declaration of Trust or to receive a cash consideration in lieu of such benefits either upon termination of the trust therein created or through severance of employment or otherwise."

The Referee, in expunging the claim as a priority claim, based his decision on Judge Leibell's ruling in a similar case, Local 140 Security Fund v. Hack, 2 Cir., 1957, 242 F.2d 375 affirming In the Matter of Sleep Products, Inc., Bankrupt, D.C.S.D.N.Y.1956, 141 F.Supp. 463. There the Court of Appeals ruled that the payments created only a debtor-creditor obligation for something other than wages. The court concluded as follows:

"The language of the statute granting priority to wages cannot be stretched so as to embrace this type of claim. If every type of payment made by an employer to a union welfare fund is to be given priority as a claim for 'wages' under Section 64, sub. a(2) of the Bankruptcy Act, that should be done through the legislative action of the Congress, and not by any judicial mislabeling of such payments as 'wages.'" 242 F. 2d at page 378.

In a concurring opinion, Judge Hincks added that a welfare fund cannot, by any construction, be embraced in the term "workman" to whom wages are due.

The question here discussed has not been decided by our Court of Appeals. On the basis of an independent analysis of the evidence against the background of several years of judicial experience in applying the Bankruptcy Act to specific fact situations, I am impelled to subscribe to the conclusion reached in the Second Circuit Court of Appeals. To summarize my conclusion, the nature of the benefits which accrued to the employees from the funds discloses that the employer's contributions do not constitute "wages" that are "earned" by and "due to" the employees. The employer's contribution is due to independent entities, the Trustees of the respective funds; the obligation of such payment is not a debt owed the individual employee. Indeed, the employee could not sue for any arrearages. The contracts themselves contain explicit language which authorize and empower the Trustees of each fund to take whatever steps may be necessary in any proceeding at law, in equity, or in bankruptcy to effectuate the collection of any sums due.[2] This evidence corroborates the finding that the employee has no proprietary interest in the funds.[3] Furthermore, inasmuch as Local 126 rather belatedly rested its claim upon the ground, among others, of an assignment, I hasten to add that it must follow from what has just been said that the employee has no assignable interest, equitable or legal, in the funds. The right to assign presupposes some property interest in a res or chose in action.

The conclusions reached become all the more convincing to me when the legislative purpose of the statutory provision is reviewed. The legislative intent underlying the priority to the specified

2. Union Exhibits, Paragraph 6(C) of 8 and 9.
3. Cf., United Marine Division, I.L.A., Local 333, A.F. of L. v. Essex Transportation Co., 3 Cir., 1954, 216 F.2d 410, 412, a case dealing with employer payments to a pension trust for employees. In that instance it was held that the trustees were not representatives of the employees or of the employers.

wage claims is to furnish distressed workers with a cushion of purchasing power against the impact of their employers' bankruptcy. Collier on Bankruptcy (14th ed. 1941), Vol. 3, Paragraph 64.201; see also Blessing v. Blanchard, 9 Cir., 1915, 223 F. 35. This rationale does not encompass an employer's unpaid contribution to a union insurance or retirement fund.

The contentions arising from the record of this case illustrate the mischief caused when we lift a term from its context and seek to have it do service in an alien setting. Conceded, the term "wages" has been expanded to comprise severance pay, vacation pay, back pay awards under the N.L.R.A. and portal-to-portal pay. In re Wil-Low Cafeterias, Inc., 2 Cir., 1940, 111 F.2d 429; In re Public Ledger, 3 Cir., 1947, 161 F.2d 762; Kavanas v. Mead, 4 Cir., 1948, 171 F.2d 195, 6 A.L.R.2d 645; and other decisions. But in all of these cases, the wages were due the worker directly for services rendered and were not due to another pursuant to a contract. The brief submitted by the claimant cites numerous decisions which interpret the term in the light of the particular statute then before the courts. For example, the court of appeals in Inland Steel Co. v. National Labor Relations Board, 7 Cir., 1948, 170 F.2d 247, 12 A.L.R.2d 240 certiorari denied 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112, examined the term "wages" in the light of Section 9(a) of the National Labor Relations Act, 29 U.S.C.A. § 159(a). We may accept that court's view that so-called "fringe benefits" are subjects over which employers are compelled to bargain collectively. The point to be noted here, however, is that the term "wages" will take its content and meaning from the particular legislative enactment. The problem, in short, calls for the application of the maxim "noscitur a sociis," which is to say that words like people, may be known by the company they keep. The general and specific words are associated with and take color from each other.

The Bankruptcy Act evinces a carefully drawn and delicately balanced pattern of priorities. As our Court of Appeals has declared in In re Ko-Ed Tavern, Inc., 3 Cir., 1942, 129 F.2d 806, 809, 142 A. L.R. 357:

"By § 64 sub. a, of the Bankruptcy Act, wage claimants are entitled to priority of payment immediately after administration expenses if, but only if, they supply the qualifications "called for by the Act. If they fail to do so, their claims are automatically relegated to the class of general unsecured creditors. See 3 Collier on Bankruptcy, 14th Ed., p. 2083."

Subsequent to the hearing, claimants directed my attention to the decision In the Matter of Embassy Restaurant, Inc., rendered June 28, 1957, by Judge Welsh of the United States District Court for the Eastern District of Pennsylvania. 154 F.Supp. 141. As the court there noted, our Court of Appeals has not resolved the matter, and cases in other circuits are not in harmony. That being so, Judge Welsh concluded that the case of In re Otto, D.C.S.D.Cal.1956, 146 F. Supp. 786, was "most persuasive." That decision of Judge Mathes rests its holding upon the theory that the employees assigned a portion of their "wages" to the welfare fund. The court emphasized that it had to look "to the state law which rules the validity and effectiveness of any partial assignment," and concluded that partial assignment was expressly sanctioned by California statute. Cal.Civ. Code, §§ 1044, 1045. 146 F.Supp. at page 790. By contrast, the law of New Jersey is contra, i. e., the courts do not enforce such assignments. Glaser v. Columbia Laboratories, Inc., 1933, 11 N.J.Misc. 707, 167 A. 201, affirmed 1934, 112 N.J.L. 91, 169 A. 693. The more persuasive reasoning it seems to me is that of Chief Judge Brennan in In the Matter of Brassel, D.C.N.D.N.Y.1955, 135 F.Supp. 827, 839, and of the courts in Local 140 Security Fund v. Hack, supra. As these courts have noted, it is for Congress to

expand the carefully framed priority coverage of the Bankruptcy Act; it is not a proper matter for judicial legislation.

The order of the Referee is affirmed.

The foregoing opinion shall constitute findings of fact and conclusions of law, as required by Rule 52 Fed.Rules Civ. Proc. 28 U.S.C.

An order may be submitted in conformity with the opinion herein expressed.